Hon. ASA O. ALDIS,
Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT,
Hon. ASAHEL PECK,
} ASSISTANT JUDGES.

---

## DAVID N. CARPENTER *v.* STEPHEN C. MILLARD AND OTHERS.

### [IN CHANCERY.]

*Mortgage. Deed. Construction. Chancery. Rents and Profits.*

November 18th, 1847, Millard and Cook executed a deed to Marshall, conveying "one undivided half of the following described tracts and parcels of land situate in Stamford, Vermont, viz:" then follows the description of several parcels of land. January 8th, 1849, Millard and Cook executed to Marshall another deed conveying their remaining undivided half of the same parcels. At the same time Marshall executed to Millard and Cook a mortgage, dated January 8th, 1849, conveying "the following real estate in Stamford, viz: the same and all the real estate described in the deed of the said Millard and Cook to me the said Marshall, dated November 18th, 1847." *Held*, that this was a mortgage of the mortgagor's whole title and interest in the land which he acquired by the two deeds to him from Marshall and Cook, not of an undivided half only.

2

Carpenter *v.* Millard et al.

---

The words "real estate" in the mortgage deed are synonymous with the word *land.* Different senses in which the word estate is used.

The purpose and effect of a decree of foreclosure of a mortgage is to cut off the right of redemption, not to settle questions of construction of a deed. But it might be competent for the court to settle the construction so as to bind parties and privies, but the point should be raised in the bill and be explicitly adjudicated in the decree. In this case the decree in favor of Millard and Cook can have no other effect than to cut off the right of redemption in whatever is embraced in the mortgage deed.

This bill being brought to enforce Marshall's said mortgage deed as it is, not to reform it on the ground of mistake, the legal construction of it could not be affected by the fact, if such had been the case, that the answer to the bill alleged that it was the intention of the parties to the said mortgage that it should convey all the mortgagor's interest in said premises derived by the two deeds from Millard and Cook, and that the answer was not traversed.

A statement in a decree of foreclosure that a certain party defendant was duly served with process, is *prima facie,* if not conclusive, proof of notice to such party of the foreclosure suit.

APPEAL FROM CHANCERY. By an agreement of parties the cause stood for trial at the December Term, 1863, KELLOGG, Chancellor, on the bill and answers, and such deeds and other papers as are referred to in the bill and answers, all of which are sufficiently set forth in the opinion of the court, and a *pro forma* decree was rendered dismissing the bill with costs,—from which the orator appealed.

*Charles N. Davenport,* for the orator, maintained that the mortgage deed executed by Marshall to Millard and Cook, was a mortgage of "one undivided half," and not of the whole interest that Marshall acquired by the two deeds from Millard and Cook to him. Where a deed contains a reference to a former deed to the grantor, for a description, the deed thus referred to controls as to the quantity and boundaries of the land conveyed. *Newmarket Manf. Co.* v. *Pendergrast,* 4 Foster (N. H.) 54; *Flagg* v. *Bean,* 5 *ib.* 49; *Everett* v. *Thomas,* 1 Iredell, 252; *Allen* v. *Bates,* 6 Pick. 460; *Butler* v. *Gale,* 27 Vt. 739. Also, see 4 Kent's Com. 364; *Galusha* v. *Sinclear,* 3 Vt. 394; *Smith* v. *Benson,* 9 Vt. 138. As to the effect of the intention of the parties upon the construction of an instrument, see *Hibbard* v. *Hurlburt,* 10 Vt. 173; *Butler* v. *Gale,* 27 Vt. 739. See also upon the question of construction *Hapgood et al.* v. *Whitman,* 13 Mass. 464; *Jackson* v. *Stevens,* 16 Johns. 110. That a deed

should be construed most strongly against the grantor, and as to the application of the rule, see Sheppard's Touchstone 88 and note.

If Millard and Cook's decree of foreclosure only gave them title to an undivided half, it seems apparent that, as to the other half, they can stand in no better light, so far as the orator and his assignors are concerned, than a mortgagor, after condition broken. The remedy then of the mortgagors and those claiming under them is, in equity, by payment of the mortgage debt. *Babcock* v. *Kennedy*, 1 Vt. 457 ; *Morey* v. *McGuire*, 4 Vt. 327 ; *Chapman* v. *Smith*, 9 Vt. 153 ; *Lull* v. *Matthews*, 19 Vt. 322 ; *Langdon* v. *Paul*, 22 Vt. 205 ; *Wiers et al.* v. *Nelson et al.*, 26 Vt. 13.    That the defendants should account for one-half the rents and profits and for the waste committed from the time they took possession, see 4 Kent, 365 ; *Booth* v. *Adams et al.*, 11 Vt. 156 ; *Johnson* v. *Tilden*, 5 Vt. 426 ; 1 Hill Ab. 453, § 59.

*A. B. Gardner*, *A. W. Preston* and *Geo. W. Harman*, for the defendants.

The opinion of the court was delivered by

PECK, J.    The orator claims that the defendant Millard and B. Wilber Cook on the 18th of November, 1847, conveyed to James E. Marshall by deed an undivided half of certain lands in Stamford, being about 1038 acres ; that on the 8th of January, 1849, they conveyed by deed to said Marshall the other undivided half of the same lands, and that on the last mentioned day Marshall executed a mortgage deed to said Millard and Cook to secure his notes to them for $6600. of the undivided half so conveyed to him by the first named deed.    The orator further claims that Marshall on the 30th of March, 1850, conveyed the entire interest he acquired by both of his deeds from Millard and Cook, to Green and Darling, and at the same time took from them their promissory notes for $10,000. the purchase price, and a mortgage of the premises to secure the same ; that Marshall on the 7th of August, 1851, assigned the last mentioned mortgage and notes to the Troy & Greenfield Railroad Co., and that that company in 1862 assigned the same to the orator.    One Rathbone and the North Adams Iron Co. are alleged to have acquired severally some portion of the premises under Green and Darling in 1851.    The bill further alleges that Millard and Cook in 1852

obtained a decree of foreclosure on their mortgage from Marshall to them, against Marshall, Green and Darling, Rathbone, the Troy and Greenfield Railroad Co. and the North Adams Iron Co., which expired unpaid April 1st, 1853, and that Millard and Cook fraudulently described, or procured to be described, in that decree, the entire estate and interest in the lands in question, when they knew their mortgage embraced only one undivided half. It is also alleged that from the expiration of the time of redemption in Millard and Cook's decree, Millard and Cook and the other defendants who subsequently purchased of them certain parcels of the premises, have been in possession of the entire estate.

These facts, so far as material to the questions raised by counsel, are substantially admitted by the answers, except the answers allege that the mortgage of January 8th, 1849, from Marshall to Millard and Cook, under which the defendants claim title, embraced the entire premises instead of an undivided half only. The case under a written stipulation of counsel stands on bill, answers and the deeds and other papers referred to in the pleadings and filed in the cause. This stipulation states that the object of thus submitting the case is to have the construction of the mortgage deed from Marshall to Millard and Cook, the rights and liability of the parties in the matter of accounting, and the legal effect of that foreclosure definitely settled by the supreme court. For that purpose the court of chancery by consent of counsel made a *pro forma* decree dismissing the bill, from which the orator appealed.

1. Thus it is seen that each party claims under Marshall. The defendant's mortgage from Marshall is prior to the orator's mortgage from Marshall's grantees. The orator claims in his bill that the Troy and Greenfield Railroad Co., who owned the notes and mortgage under which he claims was not legally notified of the proceedings in that foreclosure suit, and that therefore he as subsequent purchaser of the notes and mortgage is not bound by the decree. If such is the fact, (that the Troy and Greenfield Railroad Co. had no notice,) the orator is not bound by the decree, but still has a right to redeem the prior mortgage, whether the mortgage thus foreclosed embraces the whole premises or only an undivided half. But the answers in this case allege due notice to the Troy and Greenfield Railroad Co. in those

proceedings, and the decree in that case, filed in this cause, recites that the Troy and Greenfield Railroad Co. was duly served with process. This is *prima facie* if not conclusive proof of notice. The Troy and Greenfield Railroad Co. owning this second mortgage at the time of those proceedings and decree, was bound by the decree, and the orator in this bill having subsequently purchased that second mortgage, is equally bound and has no right to redeem, as the pleadings and proof now stand.

2. The next question is as to the extent of the interest acquired by Millard and Cook under the decree of foreclosure thereon. If Millard and Cook thus acquired title to an undivided half of the premises only, the orator, although he is cut off by the foreclosure from his right of redemption, still has a right to call on the defendants, or some of them, to account for the rents and profits of the other undivided half, at least from the commencement of this suit if no longer. Whether this bill could properly be maintained for such rents and profits without previous notice that the orator claimed the rents and profits, or whether even with such previous notice the remedy should not be at law, we do not decide, as the question is not raised in argument. On the other hand if the defendants, under the mortgage to Millard and Cook and the decree thereon, took the entire title to the lands in question, the orator has no interest in the premises and cannot maintain his bill.

It is insisted on the part of the defendants that the decree of foreclosure covers the whole interest in the lands in dispute, and that the decree is conclusive in the defendants' favor on this question, even if the mortgage deed should be construed to convey but an undivided half. The purpose and effect of a decree of foreclosure of a mortgage is to cut off the right of redemption, and not to settle questions of construction of the deed. By cutting off the equitable right of redemption it simply converts the conditional title into an absolute one, and in other respects leaves the rights of the parties to be determined by the deed. It may be true that when there is a doubt or dispute as to the construction of a mortgage deed, it might be competent for a court of chancery in a bill of foreclosure, also to settle in the decree the construction so as to bind parties and privies; but in order to do so, the point should be made in the bill, and be ex-

plicitly adjudicated in the decree. Nothing of this appears in the bill or decree in that foreclosure. It is in the usual form. Nor does it clearly appear whether the orators in that bill, or the court in the decree, treated the mortgage as covering the entire interest in the land, unless that is the construction of the deed, as the bill and decree refer to the deed which is by reference made part of the proceedings. The orators allege in that bill that Marshall on the 8th day of January, 1849, mortgaged to them "*the following messuages and tenements situate, lying and being in Stamford,*" &c., "*it being in part lots Nos.* 10, 17, 23," &c., describing the lots by numbers; and then adds, "*it being also the same lands conveyed to the said Marshall by said Millard and Cook on the* 18*th day of November, A. D.* 1847," thus referring to the same deed that the mortgage deed refers to for description. The decree recites the same description, and in the decretal part the description is, "*the mortgaged premises.*" In this description the phrase, "*in part lots Nos.* 10, 17, 23," &c., is not inconsistent with the idea of a partial undivided interest in the lots, although it may mean some portion of the respective lots by metes and bounds. In any view the description would have been very uncertain and imperfect without the subsequent reference to the deed of November 18th, 1847, referred to in the mortgage in question. It is impossible to determine definitely what real estate is embraced in the decree, without looking to the same deed to which the mortgage refers for a description. The mortgage deed therefore, so far as this question is concerned, must determine the rights of the parties unaided by the decree. The decree can have no other effect than to cut off the right of redemption in whatever is embraced in the mortgage deed.

3. It is claimed by the defendants' counsel that the answer alleges that the intention of the parties was that the mortgage deed in question should convey all that was conveyed to the mortgagor by the deed of November 18th, 1847, and the deed of January 8th, 1849; and it is claimed that that is conclusive in favor of the defendants as the answer is not traversed. But the answer does not state as a fact that such was the intention; it sets out the terms of the mortgage deed and the deed to which it refers, and refers to the mortgage deed on file as part of the answer, and insists that the construction

and intent was to convey the whole. This is not an allegation of the fact, it is an attempt to draw a legal conclusion from the deed. But if the answer be construed as alleging as a fact that such was the intention, the result is the same. If this bill were a bill to reform the deed on the ground of mistake, such an allegation in the answer, of the intent of the parties as matter of fact, not traversed, would be conclusive; but this is a bill to enforce the deed as it is, and the question is what the grantor by the deed did convey, and not whether he intended to convey more than he did convey. It is true the intention of the parties to the deed is to be considered and is to govern the construction of the instrument, but that intention is to be drawn from the instrument itself, the nature and condition of the subject matter of the conveyance, and the *status* of the parties in reference to it, and not from oral evidence of intention not admissible by the rules of law. If by the legal construction of the mortgage it conveys only an undivided half, and the defendants claim that it was the contract and intention of the parties to convey the whole, they must resort to some appropriate remedy to correct the mistake by reforming the deed. It cannot be done by alleging such intent in the answer.

4. The next question is as to the construction of the mortgage deed of January 8th, 1849, from Marshall to Millard and Cook under which the defendants claim. Is it a mortgage of the whole title and interest in the land which the mortgagor then owned as derived from his two deeds from Millard and Cook, or of an undivided half only? On the solution of this question depends the orator's right to maintain this bill, in the present state of the pleadings and proofs. November 18th, 1847, Millard and Cook executed a deed to Marshall conveying " one undivided half of the following described tracts and parcels of land situate in Stamford, Vermont, viz:" then follows a long description of a great number of parcels of land, some described by reference to other deeds on record, and some by the number of the lots, estimated at ten hundred thirty-eight acres. January 8th, 1849, Millard and Cook executed to Marshall another deed conveying " the following described tracts of land situate in said town of Stamford in the state of Vermont, viz: our remaining undivided half of all and singular the lots, tracts, pieces and parcels of land

described in our deed to the said James E. Marshall dated November 18th, 1847," " being all our interest in said lands." At the same time Marshall executed to Millard and Cook the mortgage in question, dated January 8th, 1849, conveying " *the following real estate* in Stamford, viz : " *the same and all the real estate described in the deed of the said Millard and Cook to me, the said James E., dated November* 18*th,* 1847." All these deeds contain the usual *habendum* and covenants in common form. The intention of the parties when ascertained must control the construction if it contravenes no settled rules of law. This intent must be derived from the language of the deed and such surrounding circumstances as are admissible by the rules of law tending to show the sense in which the words are used ; such as the condition of the subject matter and the *status* of the parties in reference to the title. If ambiguous words are used susceptible of two meanings, that must be adopted which best comports with the obvious intent. As a general rule a deed must be taken to convey the entire property and interest in the premises unless something appears to limit it to a partial interest. It is claimed by the orator's counsel that as this mortgage contains no description of the premises except by reference to the deed of 1847, and as that deed purports to convey but an undivided half, the mortgage is also limited to an undivided half. The force of this argument depends on the sense in which the words " *real estate* " used in the mortgage deed are to be understood. If they are to be taken as used to define the extent of the interest conveyed in the land, as well as to identify the land and define its boundaries, this argument is unanswerable. The word *estate* is often used in a strict technical sense to denote or define the extent of interest in lands or tenements, usually as measured by the duration of the interest, as an estate in fee, for life, for years, remainder or reversion. It is sometimes used to denote a partial interest, as an estate in common, where the interest is not a sole interest in one, but a partial undivided interest existing in common with another. To sustain the orator's construction we must understand the word *estate* in the mortgage in this latter sense. But the word *estate* is often, and perhaps more generally, in deeds, grants and conveyances, used in another sense, and as merely descriptive of the *corpus* of the thing itself, or in other words, as descriptive *of*, and

synonymous *with*, land itself, without reference to defining the particular interest in it.   More  especially are  the words "*real estate*" so used, both in conveyances and in common language.   They are so used  often to indicate  the  kind  of property as  distinguished from personalty,  and  as synonymous with  lands and tenements.   If the words "*real estáte*" are understood in this deed as synonymous with land,  then the deed is to be construed  the same as if  the  language had  been, *the  same and  all  the  land  described in the deed of* 1847. We think this is the  sense in which  the words real estate are to be understood in the mortgage, that is, as synonymous with land.   In this  sense the mortgage, literally construed, conveys the whole interest,  as the whole  land  is described in the deed  of 1847 to which the mortgage refers, although  an undivided half  only is conveyed by the deed of 1847.   The reason why the parties referred in the mortgage deed  to the deed of 1847 for description, instead of  the  deed executed cotemporaneously with  the  mortgage,  evidently was that the deed of 1847 contained a description of the land, while the deed of 1849 to  Marshall  did not  except  by reference to the deed of 1847. It is said by the  orator's counsel that it was necessary in the  deed of 1847  to  describe the whole land in order to convey an  undivided moiety.    That is true, but it is none the less true  that  the whole  is therein described.    This  construction is not only in accordance with the language of  the deed, but in the opinion of the court is according to the intention of  the parties.    The word  "*described,*" used in the mortgage,  is a more  apt  word  to  apply to territorial  boundaries of land, than to limit  and  describe  the  interest therein conveyed.   If the parties  had  had it in mind to limit  the  mortgage to the partial interest  conveyed  by the deed of 1847,  they probably would have used the word *conveyed* instead of *described*,  or  have  limited it in terms to an undivided half.   If the language of  the  mortgage had been, *all the right, title and interest  conveyed*  by the deed of 1847, it probably would have borne the construction for which the orator contends.   The  question of the construction of this  mortgage deed is not free from doubt, but from all the light we have we think the purpose of the reference  to  the deed of 1847, was to identify the land and define its  boundaries, and not to limit the quantity or  extent of interest in it to be conveyed, and  that  the  mortgage conveys not

merely a moiety, but the whole interest which the mortgagor acquired by the two deeds to him from the mortgagees.   This is not extending the construction beyond the territorial boundaries of the land described in the deed of 1847, nor beyond what the parties both knew the mortgagor owned at the time he executed the mortgage. The known state of the title is proper to be considered in this question of construction.   The rule that in case of doubt a deed should be construed most strongly against the grantor, comes in aid of this construction.   It is true this rule should not be resorted to if the meaning can be otherwise ascertained, and should not be allowed to turn the construction against the grantor except in cases of great doubt, but in a close question it may have its influence in turning the scale.

The result is that as this mortgage embraces the entire interest of Marshall in the land, and as it was foreclosed against the Troy and Greenfield Railroad Co. while that company owned the mortgage under which the orator claims, the orator cannot maintain this bill, either to redeem or to recover the rents and profits claimed by the bill. As the pleadings and evidence now stand we find no error in the decree of the court of chancery dismissing the bill, and the cause must be remanded with a mandate to enter such decree accordingly, unless that court in its discretion shall allow an amendment of the pleadings or further proof.   But as the case came to this court under certain stipulations of counsel for the purpose of having certain questions settled before further expense was made, the cause is permitted to stand open in the court of chancery for any amendment or further proofs which that court may deem it proper to allow.