(166 App. Div. 557)

PILLMORE et al. v. WALSWORTH et al.

(Supreme Court, Appellate Division, Fourth Department.    March 10, 1915.)

1. MORTGAGES ⬤⟾127—CONSTRUCTION.

Where one of two tenants in common conveyed his interest to the other, and the grantee thereafter gave the grantor a mortgage on all that parcel of land situated, etc., "being the same premises" conveyed by the grantor to the grantee, the mortgage applied only to the half interest originally conveyed, particularly as the security was sufficient.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 249; Dec. Dig. ⬤⟾127.]

2. ESTOPPEL ⬤⟾94—EQUITABLE ESTOPPEL—HOW ARISING.

Where a mortgage on an undivided half of a parcel of land was foreclosed, the failure of the owner of the fee of the other half who was present at the sale, where it was sought to sell the whole parcel, to assert his title, does not estop him from afterwards asserting it.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 245-247, 276-284; Dec. Dig. ⬤⟾94.]

3. ESTOPPEL ⬤⟾98—EQUITABLE ESTOPPEL—HOW ARISING.

The owner of land mortgaged an undivided half interest therein. Thereafter the mortgage was foreclosed, the whole tract purporting to be

---

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sold. The widow of the mortgagor accepted a portion of the surplus in lieu of dower. *Held*, that her act did not estop the owner of the fee of the other half of the premises from asserting his title.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 290; Dec. Dig. ☞98.]

4. DOWER ☞50—EQUITABLE ESTOPPEL TO ASSERT.

As the widow accepted the money in lieu of her dower "in the premises sold," there was no estoppel barring her from asserting her dower in the other half of the premises.

[Ed. Note.—For other cases, see Dower, Cent. Dig. § 99; Dec. Dig. ☞50.]

5. JUDICIAL SALES ☞50—PURCHASERS—NOTICE.

A purchaser at a judicial sale is charged with notice of whatever an examination of the record title would reveal.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 90–94, 96; Dec. Dig. ☞50.]

Kruse, P. J., dissenting.

Appeal from Equity Term, Oneida County.

Action by Charles Pillmore and others against Lavina E. Walsworth, impleaded with others. From a judgment for defendant named, plaintiffs appeal. Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Ward J. Cagwin, of Rome, for appellants.
E. L. O'Donnell, of Rome, for respondent.

ROBSON, J. The action is brought to determine the rights and interests of the parties in and to a fund of upwards of $2,700, deposited by the state of New York with the Albany Trust Company, which is one of the defendants, being the amount of an agreed award and compensation for the taking by the state of New York for canal purposes of certain lands and premises in the town of Lee and county of Oneida. The interests of the parties to this action in the fund and their several rights to share therein are determined by ascertaining what interests they severally had in the appropriated premises at the time the appropriation was made, except as those rights have been changed by subsequent agreement.

The property in question was known and referred to as the "Delta Mills" property. With some unimportant exceptions hereinafter noted, it was in 1857 owned by Elisha Walsworth. In that year he conveyed by separate deeds, in which his wife joined as a grantor, an equal undivided one-half of the premises to each of his two sons, Henry H. and Elisha A. Walsworth; the consideration for such transfer recited in each deed being $4,000. In 1865 Henry H. Walsworth and wife conveyed to his brother, then the owner of the undivided one-half of the premises, the one-half interest therein which the former then owned. As the decision of this case rests largely upon the reference, made in subsequent conveyances, to the premises conveyed by this deed, I will quote the description so far as it appears in the record, viz.:

"'All· that tract or parcel of land situate in the village of Delta, in said town of Lee, being one undivided half of the property known as the Delta Mills property, and is bounded and described as follows, to wit:' And then follow measurements and boundaries."

The consideration in this deed was $3,300. Thirteen years later—that is, on April 1, 1878—Elisha A. Walsworth gave to Henry H. Walsworth a mortgage securing the payment of $1,400. The wife of the mortgagor did not join in this mortgage.

The principal contention as to the several interests of the parties arises upon the construction to be given to this mortgage, depending upon whether it by its terms included the whole premises or simply an undivided one-half thereof. The description of the premises conveyed by this instrument as collateral security for the payment of the mortgage indebtedness is as follows:

"All that piece or parcel situate in the village of Delta in said town of Lee, being the same premises which was conveyed by deed by the party of the second part and Julia, his wife, to the party of the first part on the 1st day of May, 1865, excepting out of the same a corner of the garden since conveyed by deed by the said party of the first part to Charles Elmer; also those two pieces of land described in a deed of said lands made and executed by Charles Elmer and Sarah A., his wife, to the party of the first part on the 24th day of June, 1875."

The further·history of the title shows that Elisha A. Walsworth continued to own the property down to his death in February, 1889. He died intestate, leaving him surviving his widow, Rebecca, and one son, Cyrus M. Walsworth, his only heir. This son was then a nonresident of this state, and appears to have been then burdened with considerable indebtedness, some of which was in the form of judgments against him at that time. About a month after his father's death Cyrus M. gave a quitclaim deed of the property he had inherited from his father to the defendant Thomas S. Nightingale, in which the former's wife, the defendant Lavina E. Walsworth, did not join. In June following, action for the foreclosure of the $1,400 mortgage, above referred to, was begun by the mortgagee, Henry H. Walsworth. Cyrus M. Walsworth and his grantee, Nightingale, were made parties defendant in this action, and the former appeared therein by attorney. Cyrus M. died during the pendency of the action. This action resulted in the usual judgment of foreclosure and sale, followed by a sale of the premises pursuant to the judgment. After the commencement of the action and before the sale therein the mill on the premises burned. At the foreclosure sale the purchasers of the property were two sisters of Elisha A. Walsworth, Sarah A. and Susan E. Walsworth. The purchase price was $2,000, and a surplus of $1,116.15 resulted, which was ·duly deposited with the county treasurer of Oneida county. After the foreclosure sale, Rebecca, the widow of Elisha A., continued to occupy the premises for more than 20 years, paying no rent therefor and claiming a right as dowress to so occupy the same. She had died before the appropriation by the state. There is little, if any, evidence of possession of the premises taken by the purchasers at the foreclosure sale, though it does appear that they visited the premises occasionally each year during their lives, and that a part of the double house thereon not actually

occupied by Rebecca was sometimes leased to tenants, but by whom it was leased, or to whom rent was paid, does not appear.

Sarah A. Walsworth, one of the purchasers at the foreclosure sale, died prior to December 29, 1903, on which date her will, by which her interest in the premises passed to her sister, Susan E., the other purchaser, as devisee, was duly probated. About two years later Susan E. died, leaving a last will and testament, thereafter duly probated, by which she appointed two executors with power of sale of real estate. At a public sale the plaintiff Charles Pillmore purchased the title to these premises which Susan E. Walsworth had at the time of her death for the sum of $425, and the executors, by deed dated March 28, 1906, conveyed the same to him. Thereafter the state appropriated, by two separate appropriations of a part thereof, the whole premises. Pillmore and the proper state authorities agreed upon the compensation, to wit, $2,200, to be awarded for the premises so appropriated, and Pillmore and wife gave to the state a warranty deed thereof. An examination of the title by the state authorities disclosed the uncertainty of Pillmore's title to the whole of the premises in question; and pursuant to the provisions of section 88 of the Canal Law there was deposited with the defendant Albany Trust Company the sum of $2,798.86 (being the sum of $2,200, with interest accrued thereon from the date of appropriation of the lands by the state), to the credit of "Charles Pillmore and Minnie O. Pillmore, his wife, Thomas S. Nightingale and wife (name unknown), and Lavina E. Walsworth, widow of Cyrus Walsworth, as their interests may appear." Pillmore and wife thereafter made demand for the payment to them of the sum so deposited, which was not complied with. They then brought this action to have their right to the whole fund adjudicated.

After the appropriation of these premises by the state, Nightingale and wife assumed to convey by quitclaim deed to the defendant Lavina E. Walsworth their interest in the premises. It seems to be conceded that this deed was ineffectual as a conveyance of an interest in the land itself. Later Nightingale and wife assigned their interest in the damages, resulting from the appropriation of these premises by the state, to the defendant Lavina E. Walsworth, reciting the ineffectual attempt to convey to her their interest in the premises by the deed above referred to. The evidence indicates that this assignment was delivered to defendant Lavina before the service of summons in this action was completed upon any of these last-named defendants. However, whether it was or not is not a material matter here, as it was certainly delivered before the trial, and was then produced by the defendant Lavina.

[1] Bearing in mind this recital of the mutations of the title to these premises, it at once appears that a primary and fundamental question is presented as to what interest in the premises was in 1878 mortgaged by Elisha A. to his brother Henry H. by the mortgage above referred to. Was it the whole premises, or only an undivided one-half interest therein? It seems to me there can be no question that it was the latter only. Referring back to the description which I have quoted above, it will be observed that it includes:

"All that piece or parcel situate in the village of Delta in said town of Lee," limited, however, by the clause immediately following as only "being the same

premises which was *conveyed by deed* by the party of the second ·part and Julia, his wife, to the party of the first part on the 1st day of May, 1865."

The effect of this reference to the premises conveyed by the deed particularly referred to in the description is the same as though the particular description in the deed had been set out as the description of the premises intended to be covered by the mortgage. It would be notice to any one thereafter dealing with the title as complete as it would have been, had the deed and its description of the premises been therein recited at length. Howard Ins. Co. v. Halsey, 8 N. Y. 271, 59 Am. Dec. 478. Had the full description of the premises conveyed by this deed been substituted for the reference made thereto in the mortgage as "being the same premises conveyed," etc., could there be any question that only a half interest therein was mortgaged? Yet this is the exact effect of the reference to the deed as actually made. That the parties to the mortgage recognized a distinction in the meaning of the terms "conveyed by" and "described in," in referring to previous conveyances for a description of the premises intended to be conveyed, may appear in the description of the several parcels included therein. The interest in the Delta Mills property is that "conveyed by" the deed from the mortgagee to the mortgagor, while the two additional parcels are referred to as "those two pieces of land *described in* a deed of said lands," etc.

The case upon which appellants chiefly rely to uphold their contention that the whole premises were mortgaged is Carpenter v. Millard, 38 Vt. 9. In this case it was held that a description of the mortgaged premises as being the same *described* in a prior conveyance, by which an undivided interest in the property was conveyed, should under the peculiar circumstances of the case be held to cover the particular plot of land described therein, instead of limiting the meaning of the word "premises" to its usual acceptation as connoting "the property conveyed by a deed." But this conclusion was reached with some hesitation; and the distinction between a reference to the premises as *described in* and as *conveyed by* a prior conveyance is sharply accentuated in the opinion as follows:

"If the parties had had it in mind to limit the mortgage to the partial interest conveyed by the deed of 1847, they would probably have used the word 'conveyed' instead of 'described,' or have limited it in terms to an undivided half. If the language of the mortgage had been, 'all the right, title, and interest conveyed' by the deed of 1847, it probably would have borne the construction for which the orator contends."

The other two cases to which appellants direct attention on this point do not seem to aid their position. These are Sands v. Kaukauna Water Power Co., 115 Wis. 229, 91 N. W. 679, and Munn v. Worrall, 53 N. Y. 44, 13 Am. Rep. 470. The headnote to the former case indicates the decision of the court upon this point as follows:

"A mortgage in the form of a trust deed, covering lands with an appurtenant water power, reserved to the mortgagor power to lease all or any of the lots, together with the water power 'and all other rights and privileges appurtenant' thereto, and provided that upon the approval of such a lease by the trustee 'the same and *the premises,* water power, and all other rights and privileges described therein shall be no longer subject to the lien of this mortgage, except that this mortgage, during the life thereof, shall be a lien

upon the rents reserved,' etc. Held, that the word 'premises' was not used in its technical meaning, referring to the leasehold estates merely, but means the leased lots themselves—the corpus of the land."

This conclusion was arrived at largely because the word "premises," as used in the mortgage, was held to refer to the precedent expression as to leasing of the lots themselves, and was therefore held to be a correlative term. It would also seem that it was the apparent intention of the parties that the rent reserved on a lease approved by the trustee should be substituted in the place of the lots themselves with the appurtenant water power so leased. The New York case is not in point, because that was simply an exception of highways from the granted premises, and it was held that the fee of the highway and not simply the public easement was excepted from the conveyance. Of course, the word "premises" has a definite technical meaning, that is well understood as above defined. Where words have such definite meaning, and there is no contradiction or ambiguity in the same instrument, then the apparent meaning should be treated as the one intended. Schoonmaker v. Hoyt, 148 N. Y. 425, 42 N. E. 1059.

No circumstances tending to vary the accepted meaning of the language used in the description within the apparent intention of the parties is shown. That the one-half interest in the premises was sufficient security for the loan of $1,400 appears. Thirteen years before the date of the mortgage this same one-half interest had been sold by the mortgagee to the mortgagor for $3,300. There is no evidence that its value had decreased in the interim. True, the mortgagor's wife did not join in the mortgage; but, in addition to the one-half interest in the mill property, the mortgagor included in the mortgaged property two parcels of land, which he had acquired subsequently to the purchase of the interest in the mill property from the mortgagee. Taking the values as represented by the consideration recited in the conveyances, this increased the value of the land covered by the mortgage by the sum of $224. It may here be observed that the question now presented is not whether the mortgagee might not have secured a lien on the whole premises at the time he advanced the money on the mortgage, but is rather what premises did he in fact by the mortgage secure a lien upon.

[2] It is also urged that an estoppel has arisen, because Nightingale, who at the time of the sale owned the title of Cyrus in the premises, was present at the mortgage sale, and did not forbid it, nor then assert an interest in the premises. But such a suggestion is futile, because nothing could be sold, or was sold, except the interest that had been mortgaged. This is true, even though the property which it was then assumed to sell had been the whole property. As was said in Carpenter v. Millard, supra:

"The decree can have no other effect than to cut off the right of redemption in whatever is embraced in the mortgage deed."

See, also, Brewster v. Striker, 2 N. Y. 19, 41, 42.

Besides there is no evidence as to what occurred at the sale, beyond the fact of the sale and that Nightingale was present.

[**3, 4**] It is also claimed that since the defendant, Lavina, shared in the surplus produced at the mortgage sale as widow of Cyrus, an estoppel arises from that fact. But this fact in any event could not operate as an estoppel affecting Nightingale's rights as owner of the fee. Nor as matter of fact did it operate as an estoppel as to her. Her release, executed at the time she accepted a gross sum in lieu of her dower, shows that she accepted the gross sum fixed in lieu of her dower in the *premises sold*. If only an undivided one-half was so sold, then her right of dower in the remaining one-half would remain unaffected by her act in thus accepting a gross sum in lieu of her dower in the premises sold, because that half had not been sold.

There is no evidence of improvements made to the property after the foreclosure sale by the purchasers or their successor in title, from which an inference can be drawn that claim was made to the whole title. This evidence is limited to an indefinite statement that at some time after the sale the addition at the rear of the dwelling house was shingled, and that plaintiff Pillmore put a roof on the upright or main part of the house after he acquired his title. Who caused the addition to be shingled, or paid the expense thereby incurred, does not appear. Neither does it appear what, if anything, plaintiff expended in roofing the upright part of the house.

It would seem that, in any event, plaintiffs ultimately became the owners of the two small parcels conveyed to Elisha A. Walsworth by Elmer. But nothing appears as to the value of these lots as compared with the remainder of the premises; and no claim on that account seems to have been asserted on the trial, nor is there on this appeal.

[**5**] It is also urged that the equities of the case require that defendant Lavina Walsworth should not now be permitted to assert a claim to the funds in question, because plaintiff Pillmore bought the premises in good faith and for value, supposing he was getting the complete title. But he was chargeable with notice of whatever an examination of the record title would have disclosed. This, as we have seen, would have apprised him that the executors had only a half interest in the premises that they could sell.

A suggestion is also made that, if it shall be held that only one-half interest in the premises was sold at the foreclosure sale, then the judgment creditors of Cyrus Walsworth are in some manner prejudiced. Possibly, if they had then asserted their claims, they might have sold the other one-half, provided their judgments as liens antedated the transfer by Cyrus to Nightingale. But, if there were any such judgments, of which there is no proof, their lien has long since expired; and their consideration is not now important.

The judgment should be affirmed, with costs. All concur except

KRUSE, P. J. (dissenting). I am of the opinion that the $1,400 mortgage made in April, 1878, covered the entire title which the mortgagor had at the time of the giving of the mortgage, and not merely the undivided half interest which the mortgagor obtained by one of the deeds given to him, to which reference is made in the description of the lands covered by the mortgage. I think the mortgage was intended to cover the "same premises" and not merely the same interest conveyed

by the deed referred to. The words of description in the mortgage are not "one undivided half," as in the deed, but "all that piece or parcel."

The conduct of the parties subsequent to the giving of the mortgage seems to indicate that they regarded the mortgage as covering the entire title, and, if so, it is a strong circumstance bearing upon the practical construction which the parties put upon this mortgage. It does not seem to me that the circumstances are such as to support the conclusion that it was the intention of the mortgagor to give, or the mortgagee to take, a mortgage upon an undivided half for the mortgage debt, when the mortgagor in fact owned the entire title, but rather to the contrary.