# BENNINGTON COUNTY.

[Continued from *ante*, page 305.]

JOHN BELDING *v.* WILLIAM MANLY, MARCUS M. MANLY, JAMES
CURTIS AND IRA COCHRAN.

[IN CHANCERY.]

Where several promissory notes are secured by the same mortgage, and the
mortgagee has assigned to one person the note first becoming payable, and has
assigned the residue of the notes, together with the mortgage, to another per-
son, the assignee of the first note is entitled, equally with the holder of the
other notes, to the benefit of the mortgage security. HALL, J.

But a tender, by the holder of the first note to the holder of the other notes, of
the amount due on such other notes, accompanied with a demand for a transfer
of the mortgage, will be construed as an admission, that the person, to whom
the tender is made, has a prior lien, under the mortgage, for the payment of
his notes, and will preclude the holder of the first note from afterwards making
any claim inconsistent with such admission.

But the holder of the first note, in such case, is entitled to claim the full benefit
of the mortgage security, as against the mortgagor and all persons claiming
under him.

And the holder of the first note, in such case, upon a bill brought against the
mortgagor and his assignees and against the holder of the other notes, who has
also taken a subsequent mortgage of the same premises, will be allowed, upon
paying to the holder the amount due upon such other notes, to enforce his lien
upon the entire mortgaged premises, against all the defendants, as security for
the payment of all the mortgage notes.

APPEAL from the court of chancery. The facts were as *follows.*

The defendant, William Manly, in 1841, executed to one George
W. Farwell a mortgage of real estate to secure the payment of three
notes of one hundred and fifty four dollars each, payable in one,
two, and three years from date, with interest. Before the note first

payable became due, Farwell sold and endorsed it to the plaintiff. Afterwards Farwell sold the two other notes to one Isaac McDaniels, and assigned to McDaniels all his interest in the mortgage. McDaniels subsequently sold the two notes to the defendant Cochran, at the same time assigning to him all his interest in the mortgage. Before the assignment of the mortgage to Cochran, William Manly, the mortgagor, had quitclaimed the premises to the defendant Marcus M. Manly, and Marcus M. Manly had mortgaged them to the defendant James Curtis. Cochran, on the day of the assignment to him, surrendered to Marcus M. Manly the two notes, and agreed to discharge the mortgage, and included the amount of the notes, together with other demands of his against Marcus M. Manly, in a new mortgage to himself of the same and other premises. After the bringing of the bill Cochran acknowledged, under his hand and seal, upon the back of the mortgage, that he had received the contents of it in full, and the same has been recorded in the town clerk's office.

It did not appear, that any thing was said between Farwell and Belding, at the time of the purchase of the notes, in regard to the mortgage; but subsequently, and before the assignment to McDaniels, Belding claimed of Farwell, that the mortgage was a security for the note sold to him, and that he had the first right in it. McDaniels and Cochran, at the time of the several assignments to them, and Marcus M. Manly, when the two notes were surrendered to him and the mortgage discharged by Cochran, knew, that the first note was in the hands of Belding unpaid.

Before the bringing of the bill the plaintiff tendered to Cochran the amount of the two notes, and demanded an assignment of the mortgage and notes, or that Cochran would unite with him in the foreclosure of the mortgage; which Cochran refused to do;—he having previously surrendered the notes to Marcus M. Manly and agreed to discharge the mortgage.

The plaintiff by his bill claimed the benefit of the mortgage, as against the defendant Cochran, either in proportion to Cochran's claim on the two notes, or *pro rata* with him, or subject to his claim, as the court might deem equitable, and for a decree of foreclosure against the other defendants, and for general relief.

The court of chancery, June Term, 1847,—KELLOGG, Ch.,— dismissed the bill, as to all the defendants; from which decree the plaintiff appealed.

*D. Roberts, Jr.,* for orator.

1. As to William Manly and James Curtis, the orator is entitled to a decree of foreclosure,—the bill, as to them, being confessed.

2. As to Marcus M. Manly, *no equitable considerations appear,* to save him from a like decree. He took his title by quitclaim deed from William Manly, the mortgagor. Hence he stands precisely in the position of his grantor. William Manly owed this note and had mortgaged the land. Whatever understanding may have been had between Farwell and the orator, as to their relative rights under the mortgage, that was a matter between themselves, to which William Manly was a stranger.

3. As to Ira Cochran. The orator claims, that he took, with the purchase and assignment of the first mortgage note, an interest in the mortgage, to secure it. The right of Farwell and Belding, in reference to the mortgage, depend, it is said, upon their contract. *Langdon et al. v. Keith,* 9 Vt. 299. But in case no express contract be proved, the law creates one, giving to each an interest in the mortgage, according to his interest in the mortgage debt. *Martin* v. *Mowlin,* 2 Burr. 969. *Pratt* v. *Bank of Bennington,* 10 Vt. 293. *Hatch* v. *White,* 2 Gal. 152. And the assignee of the debt is entitled to the aid of the mortgage, though the mortgage be not delivered and nothing be said about it. *Green* v. *Hart,* 1 Johns. 590. *Crosby* v. *Brownson,* 2 Day. 425. *Austin* v. *Burbank,* Ib. 474. *Jackson* v. *Willard,* 4 Johns. 41. *Aymar* v. *Bill,* 5 Johns. Ch. R. 570. *Evertson* v. *Booth,* 19 Johns. 485.

But if Cochran may claim, that his new mortgage takes a priority, to the extent of the two last notes specified in the previous mortgage, (which perhaps the tender by the orator admits,) the orator claims, that he has a priority no farther, and that the orator should be permitted to redeem by paying to Cochran the amount of the notes purchased by him of McDaniels; that that sum should be tacked to the amount due upon the first mortgage note; and that the whole, with costs and future accruing interest, should be de-

Belding v. Manly et al.

creed to be paid to the orator by a short day, or the defendants be foreclosed, and the title be assured to the orator, under the first mortgage.

*Miner & Burton* for defendants.

There must have been a contract between the orator and Farwell, at the time the note was purchased, or the orator could have no lien upon the mortgage, even as against Farwell, if the mortgage were yet in his possession. *Langdon et al.* v. *Keith,* 9 Vt. 299. But here the whole mortgage has been twice unconditionally assigned, for a full consideration, and without any notice of this pretended lien, and finally, and before this suit was commenced, the notes and mortgage were cancelled, and a new mortgage was given for the full value of the premises. Can there now be any equity in disturbing the present mortgage? *Wright* v. *Parker et al.,* 2 Aik. 212.

There is no equity in the bill. It is not alleged, that William Manly, the maker of the note, is insolvent. This should have been alleged and proved, to entitle the orator to a decree.

The orator should not be allowed to pay the whole of Cochran's mortgage, and then have a lien upon the premises. This would be a wrong upon Marcus M. Manly. He paid a full consideration for the premises, knowing that the orator had purchased the first note without taking any assignment of the mortgage. If the premises had been improved by him, in the erection of new buildings, or machinery, so that they are now of more value than the Cochran mortgage, or if they had been sold, it would in effect be decreeing, that Marcus M. Manly should pay the notes.

It is true, that in *Langdon et al.* v. *Keith,* above cited, the court allowed the orator to redeem by paying both of Keith's mortgages. But this case differs from that in several important particulars. 1. That bill was in the name of the administrators of the mortgage, and this in the name of the assignee of one of the notes merely, who took it without any lien upon the mortgage. 2. In that case the mortgagor was still holding the premises, and had himself given a subsequent mortgage to the assignee of the first mortgage; while in this case the mortgagor has conveyed the premises to a third person, for a full consideration, after the note was sold by the orator.

70

3. In that case the maker of the note was insolvent; but here that does not appear. 4. The notes and mortgage, in this case, which were assigned to McDaniels and then to Cochran, had been cancelled, before this suit was brought,—the mortgage and notes were *functus officio* ;—while in that case the mortgage and notes, which had been assigned, were still outstanding against the maker, and it would be doing no one injustice for the orator to pay Keith's mortgages and to have a lien upon the premises.

The opinion of the court was delivered by

HALL, J. The view which the court have taken of the case renders it unnecessary to determine, what were the respective interests of Belding, the plaintiff, and the defendant Cochran, in the Farwell mortgage, by virtue of the transfer by Farwell to the plaintiff of one of the notes, and of the subsequent assignment of the two other notes, together with the mortgage, to Cochran. By the tender by the plaintiff to Cochran, of the amount of his two notes, the plaintiff seems to admit, that Cochran was entitled to the prior benefit of the mortgage, for the collection of his notes; and we dispose of the case upon that assumption.

Taking it for granted, then, (which however I deny,) that Cochran, as between him and Belding, acquired the full benefit of the whole mortgage for the collection of his two notes, the question arises, whether Belding, as against the mortgagor, still retains any lien upon the land, and if any, what lien ?

In regard to the effect of the division of the mortgage notes between the different parties, upon the rights of the mortgagor, little need be said. In *Langdon et al.* v. *Keith,* 9 Vt. 299, the mortgagee had sold a *part* of the notes, and with them had assigned the *whole* mortgage, retaining in his hands one of the notes ; and it was held, that though, as between the mortgagee and the assignee, the assignee had acquired the whole interest in the mortgage, yet, as against the mortgagor, the mortgagee had a lien upon the land for the security of the note retained by him. It is difficult to conceive, how it could be otherwise. The security was as binding on the mortgagor, as the note was. It was given to ensure the absolute payment of all the notes specified in it; and while any of them remained unpaid, he could not object to its being enforced. It would

be strange, indeed, if his liability could be discharged, or impaired, by any contract between the several holders of the notes, in regard to the security, to which he was not a party, and with which he had no connection. So long as any of the notes remained unpaid, so long the mortgage must remain good against him.

In this case, Manly, the mortgagor, was absolutely holden for the payment of all the notes, and the mortgage security covered the whole debt. He could not be discharged from liability on the first note by any transactions between Farwell and Belding, in regard to the liability of Farwell, as endorser of the note. Whether Farwell was originally liable to Belding as indorser, or whether, being holden, he became released by the *laches* of Belding in not giving *due notice* of the non-payment of the note, was quite immaterial to Manly, the mortgagor; and so would be any agreement between Farwell and Belding, as to which should have the prior benefit of the mortgage. Manly was, in any event, liable for the payment of the note, and the security, as to him, would stand good for its payment.

Those claiming under Manly, the mortgagor, purchasing only his right to redeem, could not stand in any better situation than he did; and the plaintiff in this case, whatever might have been his rights as against the owner of the other two notes, is clearly entitled to a decree of foreclosure against the mortgagor and those claiming under him.

This disposes of all the parties defendants, except Cochran, who claims as assignee of the two remaining notes and also of the mortgage. It is manifest, that Cochran could have no greater interest in the mortgage, than to enable him to enforce the collection of his two notes. Whenever those two notes should be paid to him, his interest in the mortgage would cease, and the plaintiff, as against the mortgagor, would be entitled to the benefit of it for the collection of his note. The plaintiff, before the bringing of his bill, offered to Cochran the amount of his notes, and demanded of him the benefit of the mortgage for the collection of his note. This offer, being all that Cochran could possibly claim under the mortgage, ought to have been accepted by him.

The decree of the court of chancery will therefore be reversed and the substance of our directions to that court will be, to give the

plaintiff the benefit of the Farwell mortgage, against all the defendants, for the collection of all the notes, upon his payment to Cochran of the amount of his two notes.

I should certainly have been better satisfied with a decree, made upon somewhat different principles. I entertain no doubt, that Belding, when the two notes and mortgage came into the hands of Cochran, was, equally with him, entitled to the benefit of the mortgage security. But whatever interest Cochran may have acquired in the mortgage by virtue of the assignment to him, I think he has no interest in it now. The very day he purchased the two notes and mortgage he gave up the notes to Marcus M. Manly, who holds under the mortgagor, and included the amount of them, with another debt of his against Manly, in a new note, secured by mortgage on the same and other premises. This new mortgage was taken subject to the mortgage to James Curtis, an incumbrance created subsequent to that of the Farwell mortgage. It was as much out of the power of Cochran, when the money was tendered to him by Belding, to give Belding the benefit of his mortgage notes and the original security, as if the amount of the notes had been paid to him by the mortgagor in money. His notes had been merged in a new security, and postponed to a second incumbrance on the land. Nothing but the extraordinary power of a court of chancery could restore Cochran's debt to its original security, and replace it in priority to the Curtis mortgage. Cochran had in fact received payment of his notes, and his lien under the Farwell mortgage was gone.

Cochran had also, at the time he gave up his notes, agreed to discharge the Farwell mortgage, and he did afterwards undertake to discharge it, under seal. This discharge was not given through any misapprehension of facts. He knew the plaintiff's note was in existence and unpaid, and to deprive the plaintiff of the benefit of his security he undertook to discharge the whole mortgage,—the plaintiff's lien as well as his own. I think it is too late for him to say, that his mortgage notes are unpaid,—too late for him to claim any benefit whatever under the mortgage.

The state of the case, then, as I view it, is this. The plaintiff's lien, as against the mortgagor and those claiming under him, remains; but Cochran's lien is gone. The security stands, as to

Belding *v.* Manly et al.

Cochran, precisely as if he had never had any interest in it, and as to all the defendants as if the mortgage had been originally given only to secure the plaintiff's note. Cochran, by virtue of his new mortgage, has, in common with the other defendants, a mere right to redeem. I would therefore have preferred a simple decree of foreclosure, against all the defendants, in favor of the plaintiff, for the amount of his note. I however assent to the direction now to be given, for the sake of making a final disposition of the case at this term, and because I suppose the decree we order to be made will have substantially the same effect upon the parties, that the decree which I have suggested would have had.

The decree of the court of chancery is to be reversed, and the case remanded to that court, with directions, that, upon the payment to the clerk, by some short day to be fixed by the chancellor, by the orator, for the benefit of the defendant Cochran, of the amount of the principal and interest of the two notes specified in the Farwell mortgage, which came into Cochran's hands by assignment, a decree be made for the foreclosure of the Farwell mortgage, in favor of the orator, against all the defendants, for the principal and interest of all the three notes; that the time of redemption be fixed by the court of chancery; and that the orator be allowed his costs in this court and also in the court of chancery.