## Case No. 9,432.

MERCANTILE TRUST CO. v. LAMOILLE VAL. R. CO. et al.

[16 Blatchf. 324.] [1]

Circuit Court, D. Vermont. May 21, 1879.

RAILROAD COMPANIES — MORTGAGE — TRUSTEE —
SUIT IN STATE COURT—RECEIVER—STAY OF
PROCEEDINGS—SERVICE IN STATE COURT.

1. The plaintiff, owning first mortgage bonds of a railroad company, brought this suit, in this court, to foreclose the mortgage and remove the two trustees, alleging that one was the sole trustee in a claimed preference mortgage of the same property, which he was seeking to foreclose in a court of the state, in which proceeding the other trustee had been appointed a receiver of the property, and was in possession. There were demurrers, and a plea of the pendency of those foreclosure proceedings, and a plea of the filing of a cross-bill therein by the trustees of the first mortgage, for foreclosure, on the day after the filing of the bill in this suit, in which this plaintiff was named a defendant, and on whom process was served, by an order of the state court, out of the state, before the service of the subpoena in this suit. The case was heard on the pleas set down for argument and the demurrers: *Held*, this court will not stay this suit until the proceedings in the state court shall be completed.

[Cited in Dwight v. Central Vermont R. Co., 9 Fed. 789.]

2. This court can and will proceed with this suit, although the property is in the possession of a receiver of the state court, though it will do nothing to disturb such possession, or to interfere with the receivership.

3. The service of the process of the state court on the plaintiff, as a defendant to the cross-bill, out of the state, was not effectual.

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

4. The fact that the mortgage trustees brought the cross-bill, did not draw the plaintiff in, and make him a party to it, by representation, as the trustees represent, in the suit, only the rights of such bondholders as join in it.

5. The position of the trustees is such that they cannot alone properly represent the bondholders, and no refusal by them to foreclose, after a request by the plaintiff, need be shown.

[Cited in Mercantile Trust Co. v. Portland & Ogdensburg R. Co., 10 Fed. 605.]

6. It is no objection to this suit that this court cannot settle the accounts of the receiver.

[This was a bill in equity by the Mercantile Trust Company against the Lamoille Valley Railroad Company, the Montpelier & St. Johnsbury Railroad Company, the Essex County Railroad Company, Luke P. Poland, and Albert B. Jewett, for a foreclosure of mortgage and the removal of trustees. Heard on demurrers and pleadings.]

Edward J. Phelps and Guy C. Noble, for plaintiff.

Benjamin F. Fifield, Luke P. Poland, and Harry D. Hyde, for defendants.

WHEELER, District Judge. This is a bill in equity brought by the plaintiff, as owner and holder of one hundred thousand dollars of the first mortgage bonds of the railroad of the defendants, which are railroad corporations, in behalf of itself, and all other like owners and holders who are non-residents of the state of Vermont, and wish to join therein, for a foreclosure of the mortgage, and removal of the trustees, alleging that one of the trustees is the sole trustee in a claimed preference mortgage of the same property, which he is seeking to foreclose in the state court, in which proceeding the other trustee has been appointed a receiver of the property, and is now in possession, with another person, as such receiver. Some other bondholders have become parties here with the plaintiff. Some of the defendants have demurred to the bill, and others have pleaded the pendency of those foreclosure proceedings, and a cross-bill filed therein by the trustees of the first mortgage, for foreclosure, on the day after the filing this bill in this court, in which this plaintiff was named a defendant, and on whom process was served, by an order of that court, out of the state, before the service of the subpoena in this cause. The plaintiff set down the pleas for argument, and the cause has been heard upon the pleas and the demurrers.

Before proceeding to the argument of the questions so raised, it was moved, in behalf of the defendants, that this court should stay these proceedings until those in the state court should be completed, and thereby compel the plaintiff to become a party there, if not already one, and to proceed there instead of here. But, courts have not the right to disown their jurisdiction. It is their duty to hear and determine causes properly brought before them, and to determine whether they are properly so brought, if such question arises, and not to advise or compel the parties to go elsewhere for relief, even though it should appear that the relief might better be obtained elsewhere. In Magna Charta, c. 29, it was declared by the king, for his courts: "Nulli vendemus, nulli negabimus, aut differemus, rectam, vel justitiam." This is fundamental to the duties of courts. The duty cannot be fulfilled by sending parties elsewhere for what they have a right to here, nor by compelling them to wait until some other time for what they have a right to now. If the plaintiff has a right to prosecute this suit in this court, it has, also, the right to have it proceeded with according to the course of the court, and, as question is made as to whether it has the right to so proceed, it has the right to have that question heard and determined, as may appear to be right, also. There was no proper course but to hear the parties upon the questions raised, and there is no proper way now but to pass upon them.

It is familiar learning, that, upon the demurrers, the bill is to be taken as true, and that, upon the pleas, the bill and pleas are all to be taken as true, unless inconsistent, in which case the allegations in the pleas prevail. These pleadings here raise two principal questions, both of which have been very thoroughly argued by counsel familiar with questions of this sort, and with these subjects. The first is, whether this court should proceed at all, or has jurisdiction to do so, while the property which is the subject of the controversy is in the custody of the state court, in the hands of its receivers. This question arises upon both the demurrers and the pleas, for the fact of the receivership is alleged in the bill as well as in the pleas.

That this court ought not to, and cannot lawfully, go so far with the proceedings as to take the possession of the property from that court, or as to in any manner interfere with the possession of it by that court, or its officers, is not disputable. Such a course would be contrary to the provisions of the statute of the United States (Rev. St. § 720) which prohibits the writ of injunction from being granted by any court of the United States, to stay proceedings in any court of a state, unless authorized by some law relating to bankruptcy. Although the possession might be trenched upon by some process or proceeding different from an injunction in form, still the effect would be the same as if the proceedings of the state court should be stayed, and the statute would be violated in spirit, if not in letter. And, if there were no such statute, as the jurisdiction of the two courts in this class of cases is concurrent, and not revisory one of the other, the one first acquiring jurisdiction, by proceedings involving the possession of specific property, could not, upon common and

well-settled principles, be disturbed in such possession by the other, while the proceedings involving the possession should be pending. The right to the possession of the property would be as exclusive as that to the rest of the proceedings. So, the debatable question here is, not whether this court will grant relief that will disturb the possession of the state court, for, surely, it will not do that, but whether it will hear and determine any question, or grant any relief, concerning the right to the property and not extending to the possession, while that court has possession. There is nothing, either in the letter or the spirit of the statute, that prohibits a party having a question of right, or a claim to relief, that can be determined without meddling with the possession of any court, from having the question determined or the relief granted by any court of competent jurisdiction for the purpose. Neither is there anything in the nature of things which should prevent. There could be no conflict between courts or their officers, growing out of such proceedings, nor are there any apparent evils likely to follow. Neither do the authorities go to that length. In Peck v. Jenness, 7 How. [48 U. S.] 612, Mr. Justice Grier, in delivering the opinion of the court, said, that the court having the possession of the property should have the disposition of "every question which occurs in the case," not including in the statement every question concerning the property. The cases which have followed are consistent with that distinction, and, in view of it, Watson v. Jones, 13 Wall. [80 U. S.] 679, is not at variance with the others. The right of the state court to the possession of the property during the continuance of the litigation before that court involving the possession, was sedulously respected, and the relief granted was carefully shaped to the disposition of the possession by the state court. In that case, Mr. Justice Miller, after stating the pleadings and proceedings, and that the bill contained a special prayer for relief that would interfere with the possession and disposition of the property by the state court, and that it contained a general prayer that would cover other relief said: "Under this prayer for general relief, if there was any decree which the circuit court could render for the protection of the right of the plaintiffs, and which did not enjoin the defendants from taking possession of the church property, and which did not disturb the possession of the Louisville chancery, that court had a right to hear the case and grant that relief." The authority of that case has not been questioned by the court which decided it, and it is not open to question here. In this case, as in that, some of the relief which the bill might cover would interfere with the possession of the state court, and some of it would not. The execution of an order of sale, under the provisions of the mortgage. or of an order for the delivery of possession, under other provisions, would have that direct effect, and, perhaps, the general prayer for relief would cover either; but, as before mentioned, it is clear that the plaintiff cannot have such relief. None can be had except that which will not interfere with the present possession. A decree of foreclosure would not. It would only cut off the equity of redemption of the plaintiff's bonds, which the mortgagors now have, and would not affect the possession at all, but. only the right. Carpenter v. Millard, 38 Vt. 9; Shaw v. Chamberlin, 45 Vt. 512; Brooks v. Vermont Cent. R. Co. [Case No. 1,964]. A mortgagee, in Vermont, may have an action of assumpsit to recover his debt, an action of ejectment to recover possession of the mortgaged premises, and a suit in equity to foreclose the right to redeem, all going on at the same time, each in a different court from either of the others, and neither will interfere with the other, nor will the pendency of any of them abate either of them. The remedy in each case is distinct from that in the others. This was so at the common law.

The objection on account of the receivership cannot prevail to prevent proceeding in this cause, so far as it can go without interfering with the receivership; and a decree of foreclosure can be had, if the plaintiff is otherwise entitled to one, without involving such interference.

The other principal question is, whether the state court had the same parties before it, either actually or by representation, for the same relief, so that it had jurisdiction of the cause, before the parties were brought before this court, so as to give jurisdiction. One branch of this question is, whether the service of the process of the state court upon the plaintiff here, as a defendant to the cross-bill there, out of the state, would be effectual. A party having property within a state submits it to the laws of the state and to such proceedings as they provide for, and, if they provide for proceedings against it without personal service, or even without any service, he must, probably, submit to them; but he cannot justly be compelled to submit to any process which the laws of the state do not provide for. The laws of the state of Vermont provide for service upon non-residents, in chancery cases, by publication in a particularly specified manner. Gen. St. 249, § 21. They also provide for constructive service upon non-resident defendants whose property is attached, in actions at law (Gen. St. 296, § 48), and, also, for service in various modes upon nonresident defendants in divorce proceedings. But they nowhere provide for any order by the courts of chancery, to serve their process out of the state, nor for serving it out of the state, in the manner in which this was served, or in any other manner. Such service has often been made, sometimes where the court required it, in order that actual notice might be given, as a matter of fairness, and sometimes as a substituted service. But,

whether it is operative at all, as the only service, has been much doubted; and that question was expressly avoided and left undecided by the supreme court of the state, in Cheever v. Birchard (pamphlet opinion of Steele, J., 10). There is no known decision of the state court holding such service to be good or bad, but there are several that hold similar service in proceedings at law to be wholly void, even in suits concerning real property within the state. Propagation Society v. Ballard, 4 Vt. 119; Skinner v. Mc-Daniel, Id. 418. The court has no jurisdiction or authority to act without the state, and it is not easy to see how it can affect any party by anything done by it, or under its order, without the state; nor how it can affect any right within the state belonging to parties without, otherwise than by proceedings under and according to the laws of the state. As viewed here, that service was not operative upon the plaintiff, nor such as it was bound to take any notice of.

But, if that service had been operative, a question whether the proceeding to which it would make the plaintiff a party was a proper one for obtaining the relief sought here, would still remain. It would have made the plaintiff a defendant to a cross-bill for the foreclosure of a mortgage securing its own debt, which might not be a very favorable position in which to obtain the affirmative relief of foreclosure in its own favor.

It is urged, however, that, because the mortgage trustees are parties, they draw the plaintiff in and make it a party, by representation, whether it will or not. The trustees hold the legal title to the mortgaged estate, but not the mortgage debt. It is quite familiar doctrine, that a mortgage is incident to the debt, which is always the principal thing. The default which would forfeit the estate would be to the bondholders owning the debt, not to the trustees holding the legal estate. The trustees could not foreclose the mortgage without the support of the bondholders, or some of them, in it. If they should undertake to do so, and no bondholder should come in and prove his bonds, they could have no complete decree. But bondholders may foreclose and have a full decree, whether the trustees will or not. At the argument, counsel very familiar with these subjects were pressed to show a case where a bondholder had undertaken to foreclose and been denied that relief, but no such case was produced; and it was admitted there were none. The bondholders have control of the bonds and the trustees have not. This is what was meant in Brooks v. Vermont Cent. R. Co., in stating that the trustees were not agents for the bondholders, and what was understood to be the effect of the authorities cited there in support of that proposition. It has been many times held, against the objection of the mortgagors that all were not joined in a proceeding to foreclose, that all need not be joined, which seems to be very plain. It is equally plain, that some must

join, at some stage, in order to have a perfect decree. Suppose some do join and others do not, and a decree perfected to foreclose the right to redeem the bonds of those who do, and not of the rest. If the property should be redeemed from that decree that would not pay the other bonds, nor cut off the owners of them from their right to foreclose. If it should not be redeemed, while the right of the mortgagors to it would be extinguished, that of the holders of the bonds not foreclosed would not be, but would still remain as against those who did foreclose, and could be enforced. Wright v. Parker, 2 Aikens, 212; Langdon v. Keith, 9 Vt. 299; Belding v. Manly, 21 Vt. 550; Brooks v. Vermont Central R. Co. [Case No. 1,964]. This shows, that, when the trustees foreclose, the bondholders who join are the real parties and foreclose in behalf of their own rights, through the trustees, and that the trustees do not represent the rights of any who do not join. In an action of ejectment, depending upon the strict legal title, it would be different. There, the trustees could prevail alone, without the bondholders, but the bondholders could do nothing without the trustees. But, in equity, the real owner is regarded and the nominal owner is not. And, as this case is situated, the trustees may not represent all the rights of the bondholders as well as they would in ordinary cases. Poland, one of the trustees in the first mortgage, is sole trustee in another mortgage, claimed to have preference. The state court has the trustees of both parties to the proceedings there. With the trustees as parties alone, the only decree there could be would be, either that he should be foreclosed unless he should pay himself and the other so much by such a time, or that both should be foreclosed unless they should pay him so much by such a time. In either case he could redeem by paying himself, which would not accomplish anything. It would all be within himself. He cannot represent the plaintiffs and their opponents at the same time. Bondholders of each mortgage are made parties, it is true, and such as may fairly represent the interests common to each class, but, if so, they do not represent in fact all others of the same classes. They can only act for themselves. Whether those proceedings shall abate this suit, depends as well upon its being for the same relief in full, as upon being between the same parties, and the relief available there might fall far short of an effective foreclosure, as is sought here. This is not the fault of the trustees, but of the position in which they have been placed by those who have made them trustees.

It is said, in behalf of one demurring party, that the bill does not show any request from the plaintiff to the trustees to foreclose, and that they are not entitled to proceed in their own behalf without such request and a refusal or failure to comply. It is true, that no such request is alleged, so far as has been observed, but it is also true, for the reasons

just stated, that none would be of any avail. The trustees are not so situated that they can foreclose alone.

It is also objected, that this court cannot proceed to a decree of foreclosure in behalf of the plaintiff, because such a decree cannot be perfected without ascertaining the sum due in equity, and that this court cannot settle the accounts of the receivers, to ascertain how much there is in their hands to apply on the mortgage debt, because it has no jurisdiction over them. It is true, that this court cannot settle their accounts. It is also true, that they were not appointed in a suit to which the plaintiff was a party; if the plaintiff had been a party there, it could not maintain this suit here; they were appointed in a suit between others and the mortgagors. The sum due in equity is to be ascertained by fixing the amount lawfully due after deducting payments. The source from which the mortgagors derive means of payment, or what means they might derive if they could have their property, or how much it would pay if the plaintiff had it, or the avails of it, is of no consequence, unless the plaintiff has had it. It was the duty of the mortgagors to make payment, and that their property got into litigation is no lawful excuse for not making it. All payments which they make or procure to be made, before the accounting, will apply as payment to keep down the sum due, and all made afterwards, and before the expiration of the time of redemption, will help them redeem. If they would have their property in the custody of a court apply in either way, they must relieve it from the custody, so it can be applied, the same as if it had been attached or taken in execution, in some suit against them. This may be unfortunate, but, if so, it is due to the insolvency of the mortgagors, not to the fault of the plaintiff.

Many books and cases have been cited in behalf of the defendants, in support of their objections, in many of which there are rulings and dicta which would be strongly in their favor if the questions had arisen in the same way, and the proceedings had been to the same purpose and effect as these; more than time and space admit of specific reference to. What is said in some of them is with reference to the effect of citizenship of actual parties upon the question of jurisdiction of the federal courts; what is said in some others is in respect to foreclosure under laws which require sale of the property, and division of the avails, and not concerning a foreclosure to merely bar the equity of redemption; and in none of them, so far as observation has extended, has anything been held upon questions precisely like these, contrary to what is here held or said, which, however applicable there, would be so here.

The pleas, although not to the whole bill, are to the relief by foreclosure, and as such cannot stand; neither can the demurrers. However desirable it might be that this cause should be before a court where all interested in the property could be made parties, and all rights to it be adjusted, still, as the plaintiffs have the right to come into this court for such relief as they can have here, and they can have some relief here, the court must entertain their cause in respect to that relief. The pleas and demurrers are overruled.