(Supreme Court, Special Term, Kings County. January, 1895.)

1. MANDAMUS—TO COMPEL THE RUNNING OF STREET CARS.
    Where a street-car company, because of its inability to get employés to accept its terms, has stopped part of its cars, to the detriment of the public, mandamus lies to compel it to resume full operation of its lines.
2. SAME—APPLICATION BY PRIVATE CITIZEN.
    An application for mandamus to compel a street-car company to run its cars may be made by any citizen of the city in which the road is located.
3. SAME—ANSWER—ALTERNATIVE WRIT.
    Where the answer to an application for a writ of mandamus raises an issue of fact, an alternative, but not a peremptory, writ may be granted, leaving such issue for trial.
4. STREET-CAR COMPANIES—REQUIRED NUMBER OF CARS.
    The number of cars to be run by a street-car company is a matter within the discretion of the directors, subject to the power of the courts to compel them by mandamus to increase the number whenever public convenience may require it.

Application by Joseph Loader for a writ of mandamus to compel the Brooklyn Heights Railroad Company to run its cars. Granted.

M. L. Towns and Delos McCurdy, for the application.
Thomas E. Moore and Julien T. Davies, opposed.

GAYNOR, J. It is my duty to declare the law of this case. This railroad corporation is not in the position of a mere private individual or company carrying on business for private gain, and free to suspend business temporarily or permanently at pleasure. On

the contrary, it has a dual relation,—a public relation to the people of the state, and a private one to its stockholders. It must not be forgotten here, though it may seem to be growing dim, if not wholly forgotten elsewhere, that in its chief aspect it is a public corporation, having duties to perform to the public which transcend any obligation which in its private aspect it owes to its stockholders. It has received franchises of great value from the state, and had conferred upon it the state's transcendent power of eminent domain. In return it took upon itself the performance of public duties and functions, in the performance of which it is, in law and in fact, not an independent individual or entity, but the accountable agent of the state. Though these principles are old, and inherent in the idea of the sovereignty of the people, it would seem that in the recent rapid growth of corporate power, and of the tendency to use public franchises for the aggrandizement of individuals first, and for the service and benefit of the public second, they have come to be somewhat overlooked, and need to be restated. They have often been declared by the highest courts of this state and the supreme court of the United States. Olcott v. Supervisors, 16 Wall. 687, 694; Bloodgood v. Railroad Co., 18 Wend. 9; People v. New York Cent. & H. R. R. Co., 28 Hun, 543. The duty of the company now before the court is to carry passengers through certain streets of Brooklyn, and to furnish, man, and run cars enough to fully accommodate the public. It may not lawfully cease to perform that duty for even one hour. The directors of a private business company may, actuated by private greed or motives of private gain, stop business, and refuse to employ labor at all, unless labor come down to their conditions, however distressing; for such are the existing legal, industrial, and social conditions. But the directors of a railroad corporation may not do the like. They are not merely accountable to stockholders. They are accountable to the public first, and to their stockholders second. They have duties to the public to perform, and they must perform them. If they cannot get labor to perform such duties at what they offer to pay, then they must pay more, and as much as is necessary to get it. Likewise, if the conditions in respect of hours or otherwise which they impose repel labor, they must adopt more lenient or just conditions. They may not stop their cars for one hour, much less one week or one year, to thereby beat or coerce the price or conditions of labor down to the price or conditions they offer. For them to do so would be a defiance of law and of government, which, becoming general, would inevitably, by force of example, lead to general disquiet, to the disintegration of the social order, and even the downfall of government itself. Experience shows the wisdom of our fathers in retaining at least some control of corporations to which are given public franchises for the performance of public duties. I shall quote from a case decided upon appeal by the supreme court in this state in 1883, after mature deliberation, and which is an authority I am bound to follow, even though I were not of the same view, and which, I need scarcely say, the corporation now before this

court is bound to acquiesce in, and which I doubt not it will immediately acquiesce in, for example's sake, if for no other reason. That case arose out of the failure of the New York Central & Hudson River Railroad Company to receive and forward freight as a common carrier. The language of the court is as follows:

"According to the statements of the case, a body of laborers, acting in concert, fixed a price for their labor, and refused to work at less price. The respondents [the railroad company] fixed a price for the same work, and refused to pay more. In doing this neither did an act violative of any law, or subjecting either to any penalty. The respondents had a lawful right to take their ground in respect of the price to be paid, and adhere to it, if they chose; but if the consequence of doing so were an inability to exercise their corporate franchises, to the great injury of the public, they [the railroad company] cannot be heard to assert that such consequence must be shouldered and borne by an innocent public, who neither directly nor indirectly participated in their causes." People v. New York Cent. & H. R. R. Co., 28 Hun, 543.

The court in that case allowed a writ of mandamus to compel the corporation to do its corporate duties.

That a private citizen has sufficient standing to make this application, which could unquestionably be made by the attorney general of the state, has heretofore been twice decided by this court, and I must accept it as law. And, it being admitted that the company is not fully operating its lines of road, it follows that it is my duty to allow the writ prayed for, either in its peremptory or alternative form, unless a sufficient answer has been made in law. I do not think the answer of the company is sufficient to prevent a writ from being issued. The claim of violence amounting to a prevention is not legally made out. Instances of violence, generally by others than the former employés of the company, are shown, but it is also shown that not only the police force of the city, but also over 7,000 soldiers, are preserving order; and I cannot believe that this company is not protected in its rights, nor do I think any question of fact is fairly raised on that head. Besides, the persistence of the company in failing to run its cars except as it may gradually get employés to accept its terms, being in itself unlawful, as I have shown, must necessarily, by its bad example, tend to public disquiet, if not to some disorder. In respect of the question of hours and of wages between the company and its employés, its duty was to have gone on, and now is to go on, with its full complement of employés, having the right gradually and from day to day to supersede its employés if it can, by new employés who will work on its terms, or to supersede them all at once when it has obtained a sufficient number of new employés for that purpose; but in such a controversy it has not the right to stop its cars while it is thus gradually getting other men. If the people of the state were running these roads, they would not thus incommode and damage themselves, and it must not be forgotten that this corporation is intrusted with the running of these roads as the servant of the people of the state.

It therefore only remains for me to determine the form of the writ,—whether it shall be peremptory or alternative. In one aspect of the case, there seems to be an issue of fact presented; and,

if such an issue be presented, the law does not permit me to decide it and allow a peremptory writ, but requires me to allow an alternative writ, which has the effect of reserving such issue of fact to be tried by a jury, or by the court, if so agreed upon. At one place in its answer the company avers that a reason why its employés would not continue working for it was "that it refused to run its cars as required by said employés, in respect to the frequency with which cars should be run, and the number of cars to be run." The number of cars or trains which a railroad shall run is left to the sound discretion of its directors, subject to review by the courts upon an application for a writ of mandamus to make them run more if the public convenience require it. Its employés may not assume to determine the number of cars to be run. If, however, this allegation in the answer refers to the controversy in respect of what are called "trippers," then it has no force, for that controversy is, in its essence, one in respect of hours and wages. Alternative writ granted.

M. L. Towns and Delos McCurdy, for the application.
Thomas E. Moore and Julien T. Davies, opposed.

GAYNOR, J.   To deny this application, I would have to decide that this company is prevented by violence from operating its roads; but that I cannot find, upon the papers before me. I do not find that the city and the state have failed to fully protect its power house, its stations, its roads, and the cars it has offered to run. I do not find that the government has failed at all in its obligation of protection. The answer to the statement that there have been instances of violence is that they were swiftly suppressed. I cannot acquiesce, or even seem to acquiesce, in statements which have made it appear that mob riot has ruled in Brooklyn, and which have not only given a law-abiding community a bad name, but, by exciting fear in many, must have done incalculable damage to business interests. To try to forcibly prevent the company from doing its public