The proper construction to be placed upon these statutes is that which I have indicated, and conforms to the well-established canon of statutory construction which harmonizes the provisions of both statutes and gives effect to all of the provisions of each.

These applications now before the court must be determined by the plain provisions of the statute, and not by the adoption of a forced construction for the purpose of avoiding certain hardships which it is assumed would result in certain districts if the statutory provisions are followed. If the existing statutes do not compel political organizations to adopt the fairest possible "unit of representation," it is entirely within the province of the Legislature to remedy the situation by appropriate amendment. But the functions of the board of elections are not legislative, and it is not within its province nor within that of the courts to attempt by constructions which do violence to the plain provisions of the statute to remedy what may be conceived to be defective in the existing law.

It follows that the determination of the board of elections upon the objections to the call or statement should be reversed, and the board of elections should be directed to publish the call as provided by law and to print the ballots in substantial conformity to the usual forms.

Settle order on notice.

---

## PEOPLE v. NEW YORK CITY RY. CO.

(Supreme Court, Special Term, New York County. November 30, 1907.)

1. CORPORATIONS—RECEIVERS—MANAGEMENT OF PROPERTY — AUTHORITY OF RECEIVER.

The appointment of a receiver of a corporation by a court of equity at the instance of a creditor gives to the receiver only its temporary management under the direction of the court, and is merely incidental to the principal relief sought; but the corporate existence continues.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2243.]

2. SAME—DISSOLUTION—CAUSES—ACTION TO REVOKE CHARTER—JURISDICTION.

A corporation can only cease to exist by a surrender, forfeiture, or repeal of its charter; and a surrender can only be made to the state which grants it, whose courts also have exclusive jurisdiction of actions to revoke or forfeit its charter and franchises.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 2422.]

3. COURTS—CONFLICTING JURISDICTION—STATE AND FEDERAL COURTS—CORPORATIONS—APPOINTMENT OF RECEIVERS.

A state court has jurisdiction of an action brought under the express provisions of Code Civ. Proc. § 1785, to forfeit the charter and franchises of a domestic corporation insolvent for at least a year, and for the appointment of a temporary receiver, notwithstanding receivers of the same corporation have already been appointed in a suit by general creditors brought in a federal court to protect the corporation's franchises and property and preserve its corporate existence, since the objects of the two suits are different, although ordinarily, where two courts have concurrent jurisdiction, the one which first assumes jurisdiction has it exclusive of the other.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1347.]

4. SAME—COMITY—EXTENT OF DOCTRINE.

Courts will not indulge considerations of comity when to do so would disown their own exclusive jurisdiction of a matter over which they have the exclusive control, or work to the injury of residents of their own state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1343.]

5. SAME—GROUNDS OF JURISDICTION—RECEIVERS.

The power of a federal court to appoint receivers of a corporation is an incident of its equitable jurisdiction, while the jurisdiction of the state courts to forfeit corporate franchises is statutory.

6. FRANCHISES—TRANSFER.

A corporation owning public franchises owes primarily a duty to the state, and is subject to governmental regulation; and the transfer of its public franchises, either by the corporation or by other means, without the consent of the state, is against public policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Franchises, § 5.]

7. STREET RAILROADS—APPOINTMENT OF RECEIVER PENDENTE LITE—EFFECT.

The appointment pendente lite of receivers of a street railway corporation exercising public franchises practically devolves upon the receivers the performance of corporate functions of a public character and governmental nature, amounting to a transfer of its franchises.

8. COURTS—CONFLICTING JURISDICTION—FORFEITURE OF CORPORATE FRANCHISE—PROCEEDINGS BY STATE—RECEIVERS—ACTION PENDING IN FEDERAL COURT.

In an action in a state court to forfeit the charter of a domestic street railway corporation exercising public franchises delegated by the state, for which receivers have been appointed by a federal court, it is proper to appoint a receiver, with instructions to request the federal court to relinquish control.

Action by the people of the state of New York against the New York City Railway Company for a dissolution of the defendant corporation. On motion to appoint a receiver. Granted.

William Schuyler Jackson, Atty. Gen. (Frank H. Mott, William F. Mackey, and Herbert R. Limburg, of counsel), for the motion.

Samuel Untermyer, opposed.

SEABURY, J. This action is brought by the Attorney General of the state of New York to dissolve the defendant corporation, pursuant to the provisions of sections 1785 and 1786 of the Code of Civil Procedure.

Section 1785 of the Code of Civil Procedure provides that:

"An action to procure a judgment dissolving a corporation, created by and under the laws of the state, and forfeiting its corporate rights, privileges and franchises, may be maintained as prescribed in the next section: (1) When the corporation has remained insolvent for at least one year. * * *"

Section 1786 of the Code of Civil Procedure provides that:

"An action specified in the last section may be maintained by the Attorney General in the name and in behalf of the people."

The Attorney General seeks to maintain this action under subdivision 1 of section 1785 of the Code of Civil Procedure, upon the ground that the defendant "corporation has remained insolvent for at least one year." In the action now pending the Attorney General moves for the appointment of a temporary receiver. This motion is made

pursuant to section 1788 of the Code of Civil Procedure, which provides for the appointment of a temporary receiver and defines the powers of such receiver.  The motion for the appointment of a receiver is made upon the summons, verified complaint, and affidavit of the Attorney General.  The answer of the defendant and the affidavits submitted on its behalf deny that it has been insolvent for "at least one year," but admit its present insolvency.  The proof now before the court establishes beyond all question, not only that this defendant has been insolvent for at least one year past, but that for several years last past it has been in this condition, and that its insolvency during that time has been continuous and progressive.  Under the provisions of the Code of Civil Procedure referred to above the right and duty of the court to grant this motion would be perfectly clear, except for certain proceedings which have been taken in the federal court.  It is necessary, therefore, at the outset to consider the proceedings in the federal court and to ascertain their legal effect upon the motion now made in this action.

On September 24, 1907, the Pennsylvania Steel Company and the Degnon Contracting Company, both being foreign corporations organized under the laws of the state of New Jersey, filed a bill in equity in the United States Circuit Court against the New York City Railway Company.  It does not appear that the usual notice of motion was given or that any order to show cause why receivers should not be appointed was made or served.  It does, however, appear that upon the same day the New York City Railway Company filed its answer in said suit, which confessed the allegations of the bill, an order was then immediately made, by Mr. Justice Lacombe of the United States Circuit Court, appointing Douglas Robinson, Esq., and Adrian Joline, Esq., receivers of all the property and franchises of the defendant. The bill filed in the United States Circuit Court prayed that receivers be appointed "for the purpose of preserving the unity of the system of the defendant as it has been maintained and operated, and to enable the receiver to do any and all acts which may be necessary to preserve valuable rights and franchises of the defendant," and "to protect and preserve the corporate franchises, privileges, and property and to preserve the corporate existence of the defendant."  It also appears that the Pennsylvania Steel Company and the Degnon Contracting Company, who filed the bill, were merely general creditors, never having reduced their claims to judgment, nor having secured any other lien of any nature upon the property of the defendant corporation.  Notwithstanding this fact, the defendant corporation, upon the same day that the bill was filed, confessed the claims and made no opposition to the appointment of receivers, and the court immediately granted the application, and the order appointing receivers directed "that the operation of the railroad system of the defendant shall be continued in the same manner as at present."  On October 8, 1907, Mr. Justice Lacombe, in the United States Circuit Court, made an order making permanent the receivership.  The Attorney General, in the papers submitted upon this application, charges that the above-described proceeding in the federal court was fraudulent and collusive, in that the defendant induced the Pennsylvania Steel Company and the Degnon

Contracting Company to file the bill, and immediately confessed all of its allegations and aided in securing the appointment of receivers of its own property, to the end that the property of this corporation should be left under a control that was friendly to the interests of those who had previously managed its affairs, and that it might by means of such receivership be relieved of obligations which it owed to the state which had created it. While the unity of action and purpose which seems to have actuated the plaintiff and defendant in that suit, together with the extraordinary—if not unseemly—haste which characterized the action taken, cause such suspicion to arise in every unprejudiced mind, it must be remembered that suspicion, no matter how well founded it may be, does not rise to the dignity of legal proof, upon which alone courts may base the judgments or decrees which they render in judicial proceedings.

Before we attempt to determine the legal effect of the proceedings in the Circuit Court and the appointment of the receivers therein, we should understand clearly the distinction which exists between the suit in the federal court and the action now pending in this court. The purpose or object of the suit in the federal court and that of the action now pending in the state court are radically different. The suit in the federal court is based upon the assumption of the continued existence of the corporation, and seeks to liquidate its affairs only in so far as may be necessary to protect the interests of those who have invoked the jurisdiction of that court. The action in the state court is primarily for the purpose of terminating the existence of the corporation by forfeiting its charter. The purpose of such an action is to enable the state, which gave corporate life, to take it away and to administer the assets and property of such corporation as a trust fund, so that the rights of all those having an interest in it may be fully protected. The existence of this distinction is nowhere so clearly marked as in those cases where receivers of corporations have been appointed. The appointment of a receiver of a corporation by a court of equity at the instance of a creditor gives to the receiver only the temporary management of its affairs under the direction of the court, and is merely incidental to the principal relief sought, "and the corporation still exists, and may, nevertheless, exercise any of its franchises so long as it does not interfere with the rightful management of its affairs by the receiver, as his duties are defined by the order of the court appointing him." Alderson on Receivers, p. 506, § 353; Decker v. Gardner, 124 N. Y. 334, 26 N. E. 814, 11 L. R. A. 480, and cases cited. In such cases the property may be sequestrated, but the corporate existence continues, and its corporate identity is preserved. Del Valle v. Navarro, 21 Abb. N. C. 136; 24 Am. & Eng. Ency. of Law, p. 10. Thus a corporation still continues to exercise its corporate powers after the appointment of a receiver when its dissolution is not decreed. Even in an action to forfeit the charter of a corporation, such corporate powers would continue to be exercised until the corporate existence was terminated, and, in that event, its property would be distributed as provided by law.

An action to revoke a charter and franchises of a corporation granted by a state is one of which the courts of that state have sole

and exclusive jurisdiction. Having in mind the radically different objects sought to be accomplished in the suit in the federal court and the action in the state court, we are in a position to arrive at a correct conclusion as to the effect of the proceedings in the federal court upon the motion now pending in this court. The rule applicable to this case is stated with great clearness by Mr. Justice Bradley in the case of Wilmer v. Atlantic & Richmond Air Line Co., 2 Woods, 426, Fed. Cas. No. 17,776. In that case Mr. Justice Bradley said:

"It is too well settled to admit of controversy that, where two courts have concurrent jurisdiction of a subject of controversy, the court which first assumes jurisdiction has it exclusive of the other; but, where the objects of the suits are different, this rule does not apply, although the thing about or in reference to which the litigation is had is the same in both cases."

This statement of the rule, and the "significant and important" exception to it, have been generally accepted by courts and text-book writers as being a correct declaration of the law upon this subject. Ill. Steel Co. v. Putnam, 68 Fed. 515, 15 C. C. A. 556; East Tenn. & Ga. R. R. Co. v. Atlanta & Fla. R. R. Co. (C. C.) 49 Fed. 608, 15 L. R. A. 109; Liggett v. Glenn, 51 Fed. 381, 2 C. C. A. 286; Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660; Merchants' & Planters' Nat. Bank v. Trustees of Masonic Hall, 63 Ga. 549; Anderson on Receivers, p. 26, § 20. After stating the rule declared by Mr. Justice Bradley, Mr. Alderson, in his work on Receivers, reviews the authorities and then says:

"It is apparent from the foregoing cases, as well as the reason attending the rule announced in the preceding section, that Mr. Justice Bradley correctly asserted in the Wilmer Case that, 'where the objects of the suits are different, this rule does not apply, although the thing about or in reference to which the litigation is had is the same in both cases.'"

The same author, after intimating that some difficulty may attend the application of this rule, makes the following statement, which is clearly applicable to this case, and which he fortifies by the citation of authorities:

"Nor can the seizure and possession of property of a corporation through a receiver appointed in a proceeding by a stockholder or creditor preclude the court having cognizance of a proceeding by the state to dissolve and wind up the affairs of the corporation from appointing a receiver and taking possession of the property of the defendant, and this both because of higher right and the fact that the objects of the suits are not the same." State v. Port Royal & Augusta Ry. Co., 45 S. C. 470, 23 S. E. 363, 386; Herring v. N. Y., L. E. & W. R. R. Co., 105 N. Y. 340, 12 N. E. 763; In re Kittaning Ins. Co., 146 Pa. 102, 23 Atl. 336; St. Louis Car Co. v. Stillwater Ry. Co., 53 Minn. 129, 54 N. W. 1064; City Water Co. v. State of Texas, 88 Tex. 600, 32 S. W. 1033; Texas Trunk Ry. Co. v. State of Texas, 83 Tex. 1, 18 S. W. 199; In re Pound, 42 Ch. Div. 402; De La Vergne Ref. Mach. Co. v. Palmetto Brewing Co. (C. C.) 72 Fed. 579; Met. Trust Co. v. Lake Cities Elec. Ry. Co. (C. C.) 100 Fed. 897; Merchants' & Planters' Nat. Bk. v. Trustees of Masonic Hall, 63 Ga. 549.

In State v. Port Royal & Augusta Ry. Co., supra, it was held, in the language of the syllabus to that case, that:

"In an action in a state court to forfeit the charter of a corporation for which a receiver has been appointed by a federal court, it is proper to appoint a receiver, with directions to him to apply to the federal court for the possession of the property."

In Louisville, New Albany & Chic. R. R. Co. v. Cauble, 46 Ind. 277,. 280, an action was brought in the state court of Indiana, under an act of the Legislature of that state, against a corporation of that state of which the federal court had already appointed a receiver. The court upheld the right of a party to proceed under the statute in the state court, and said:

"The question discussed by counsel for appellant, therefore, resolves itself into the question of whether the Legislature of this state possessed the constitutional power to pass the above recited act. The corporate existence, powers, and franchises of the appellant were conferred by the Legislature of this state. We have carefully examined the decree of the United States Circuit Court for the District of Indiana appointing Mr. Chapman receiver, and find nothing therein which attempts to take away the corporate existence, powers, or franchises of the appellant; and it is, therefore unnecessary for us to express any opinion as to the power of the federal judiciary to decree a forfeiture of the corporate existence and franchises of a corporation created by a sovereign state. The whole decree proceeds upon the theory that the appellant is a corporation created and existing under the laws of this state. The whole effect of the decree is to take the custody, control, and management of such corporation out of the hands of the persons who were controlling and managing the same, and to place the same into the custody and under the control and management of the receiver for a specified time and for a special purpose. The corporate existence of the appellant was left intact. The corporate powers and franchises which have been exercised by the officers of the company were conferred for the time being upon the receiver. The power and authority of the receiver to manage and control the company and its operations depended upon its corporate existence. If° that had been taken away, the power and authority of the receiver would have ceased and terminated; for no court, federal or state, can confer corporate powers and franchises upon an individual. Such powers can be created and. conferred by the legislative department alone."

In City Water Company v. State of Texas, 88 Tex. 600, 604, 32 S. W. 1033, a receiver of the property of a corporation was appointed in the federal court, and an action was brought in the state court to forfeit the charter of such corporation. The court held that the action in the state court might proceed notwithstanding the action in the federal court, and in answer to the question propounded to it the court said:

"That the receivers appointed by the United States Circuit Court for the corporation defendant in this suit was neither a proper nor necessary party to an action by the state to forfeit its charter."

In People v. Seneca Lake Grape & Wine Co., 52 Hun, 174, 178, 5 N.. Y. Supp. 136, 138, it has been held that the pendency of voluntary proceedings for the dissolution of a corporation is no bar to a proceeding by the Attorney General in the name of the people, under chapter 15, tit. 2, art. 3, of the Code of Civil Procedure, to dissolve the corporation. The court said:

"We think it obvious that it was not intended by the Legislature that the voluntary proceedings for the dissolution of the corporation should preclude the people, by the Attorney General, from commencing an action to procure a dissolution of a corporation for any of the grounds stated in section 1785. As a general rule a cause of forfeiture cannot be taken advantage of and enforced against a corporation, except by the government creating the corporation, which alone can institute such a proceeding, as it may waive a broken condition, express or implied, in the act of incorporation."

*

In St. Louis Car Co. v. Stillwater Street Ry. Co., 53 Minn. 129, 54 N. W. 1064, an action was instituted under a state statute to sequestrate the property of a corporation of which a receiver had already been appointed in a foreclosure suit. In asserting the right of the court to appoint a receiver in the action brought under the state statute, the court said:

"The fact that a receiver had already been appointed in the foreclosure suit constituted no reason why a receiver should not be appointed under Gen. St. 1878, c. 76. A receivership in a suit to foreclose a mortgage is only for the purposes of the foreclosure, and, however general the language of the appointment, affects only the property covered by the mortgage. Its purpose is to preserve the mortgaged property for the benefit of the mortgagee. On the other hand, the object of a receivership of an insolvent corporation under Gen. St. 1878, c. 76, is to sequestrate all its property for the benefit of all its creditors. The powers of the receivers in the two cases are entirely different. There are various classes of property that can be reached by a receiver under chapter 76 which could not be reached by a receiver appointed in a foreclosure suit."

The object of the suit in the federal court being different from the action now pending in the state court, the present application for the appointment of a receiver is clearly within the well-recognized and established exception to the general rule stated by Mr. Justice Bradley. There is no doubt, therefore, of the legal right of this court to grant the motion of the Attorney General and appoint receivers.

The only other question to be determined upon this motion is whether, on account of considerations of comity, this court in the present action should decline to exercise its undoubted right to appoint receivers, in view of the fact that receivers have already been appointed in the federal court in a suit of a different character and designed to accomplish a different object. Courts will not indulge considerations of comity, when to do so would disown their own jurisdiction in reference to a matter of which they have the exclusive right to act, or when to do so would work to the prejudice or injury of residents of their own state. Mercantile Trust Co. v. Lamoille Valley R. R. Co., 16 Blatchf. 324, Fed. Cas. No. 9,432. A corporation can only cease to exist by virtue of a surrender, forfeiture, or repeal of its charter, and such surrender can only be made to, and such forfeiture or repeal effected by, the state. Denike v. N. Y. & R. Line, 80 N. Y. 599. Neither the federal court nor any other power than that of the sovereign to which the corporation owes its life and franchises can cause a forfeiture of these privileges. There is no principle more firmly fixed in English and American jurisprudence than that the state which gave can alone take away the life and privileges of a corporation.

The power of the federal court to appoint receivers exists by virtue of their equitable jurisdiction. Payne v. Hook, 7 Wall. (U. S.) 425, 19 L. Ed. 260. Jurisdiction to forfeit corporate franchises in England was vested in the courts of law, and "the courts of chancery never assumed jurisdiction in such cases until it was conferred by act of Parliament." Decker v. Gardner, 124 N. Y. 334, 337, 26 N. E. 814, 11 L. R. A. 480. At the present time such power is wholly statutory, and is vested in the state courts. Matter of B. G. E. Co., 143 N. Y. 261, 38 N. E. 297; Matter of Coleman, 174 N. Y. 373, 382, 66 N. E. 983. The reason why courts of equity cannot dissolve corporate franchises

depends upon the essential nature of the powers which corporate bodies possess. While the authorities do not deny the right of a court of equity to appoint receivers of corporate property, as an incident to its jurisdiction, they show very plainly that, in case of a corporation exercising public franchises, such an appointment pendente lite practically devolves upon the receivers appointed by the court the performance of corporate functions which are public in character and governmental in their nature. A corporation owning and operating public franchises owes primarily a duty to the state which created it. As was said by the United States Supreme Court in Wisconsin, etc., R. Co. v. Jacobson, 179 U. S. 287, 296, 21 Sup. Ct. 115, 118, 45 L. Ed. 194, in speaking of such corporations:

"Railroads have from the very outset been regarded as public highways, and the right and the duty of the government to regulate in a reasonable and proper manner the conduct and business of railroad corporations have been founded upon that fact. Constituting public highways of a most important character, the functions of proper regulation by the government spring from the fact that in relation to all highways the duty of regulation is governmental in its nature. At the present day there is no denial of these propositions. Olcott v. Supervisors, 16 Wall. 678, 694, 21 L. Ed. 382; Cherokee Nation v. So. Kan. Ry. Co., 135 U. S. 641, 10 Sup. Ct. 965, 34 L. Ed. 295; U. S. v. Joint Traf. Ass'n, 171 U. S. 505, 569, 570, 19 Sup. Ct. 25, 43 L. Ed. 259; Lake Shore Ry. Co. v. Ohio, 173 U. S. 285, 301, 19 Sup. Ct. 465, 43 L. Ed. 702. It is because they are such highways that the land upon which the rails are laid, and also that which may be necessary for the other purposes of the corporation, is said to be used for a public purpose, and on that ground the power of eminent domain which is given to them is held to be a constitutional exercise of legislative authority. The right of the Legislature to tax in furtherance of such use is founded upon the same consideration that the use is a public one, and therefore taxation in support of such use is valid. Olcott v. Supervisors, supra. The companies hold a public franchise, and governmental supervision is therefore valid. They are organized for the public interest and to subserve primarily the public good and convenience."

Such being the case, they are subject, as has been repeatedly held, to governmental regulation and supervision. But the effective exercise of the power of regulation and supervision depends upon the continuance of state control over the franchises which the corporation enjoys. In the case of Atlantic Coast Line v. No. Ca. Corp. Com'n, 206 U. S. 1, 19, 27 Sup. Ct. 585, 591, 51 L. Ed. 933, the court said:

"The elementary proposition that railroads, from the public nature of the business by them carried on and the interest which the public have in their operation, are subject, as to their state business, to state regulation, which may be exerted either directly by the legislative authority or by administrative bodies endowed with power to that end, is not and could not be successfully questioned, in view of the long line of authorities sustaining that doctrine."

Thus it is settled that the public franchises of a corporation cannot be alienated without the consent of the state. This rule and the reasons upon which it rests are well stated by Judge Noyes in his valuable treatise on Intercorporate Relations (section 135), where he says:

"It is a rule applicable to all corporations exercising public franchises that such franchises can be transferred only by and with the consent of the state which granted them—that corporate franchises are incommunicable without legislative authority. The courts have assigned various reasons for the existence of the rule, of which the following are based upon principles fundamental-

ly sound:  (1) The charter of a corporation is the measure of its powers.  Unless authority to transfer its franchises is expressly granted, such an act is ultra vires.  (2) The transfer by a corporation of its franchises—disabling it from the performance of its public duties—is against public policy.  (3) A corporation exercising public franchises is an agent of the state, and without the consent of the state cannot delegate its powers."

The rule thus declared is obviously for the benefit of the state, and not of the corporation.  The same reasons which demonstrate that the transfer by a corporation of its public franchises, without the consent of the state, is against public policy, apply with equal force when such transfer is effected by other means without the consent of the state which created them.  The public character and governmental nature of the functions performed by a street railway corporation are evident from the following considerations:

1. Such functions cannot be exercised without the consent of a sovereign power.  The construction and maintenance of a street railway by an individual, or association of individuals, without legislative authority, would constitute a public nuisance, and subject the persons maintaining it, not only to indictment, but also to a private action in favor of any person sustaining special injury.  Fanning v. Osborne, 102 N. Y. 441, 447, 7 N. E. 307.

2. Those functions involve the use of state public property.  Such franchises are exercised in public highways or streets.  Our modern streets, roads, and highways constitute "the people's highways," as at common law they were regarded as belonging to the king, and such "public highways" belong, from side to side and end to end, to the public.  State v. Berdetta, 73 Ind. 185, 193, 38 Am. Rep. 117.  See, also, Wis. v. Jacobson, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194.

3. Such corporations are agents of the state, permitted by the sovereign power to exercise the right of eminent domain and to collect tolls or fares for the service which they render.  The exercise of these rights involves the exercise of the state's sovereign power, and cannot be delegated without the consent of the state, and the enjoyment of these great privileges imposes upon such corporation a corresponding duty.

In Matter of Loader, 14 Misc. Rep. 208, 35 N. Y. Supp. 997, Mr. Justice Gaynor said:

"It [the railroad corporation] has a dual relation; a public relation to the people of the state, and a private one to its stockholders.  It must not be forgotten here, though it may seem to be growing dim, if not wholly forgotten elsewhere, that in its chief aspect it is a public corporation, having duties to perform to the public which transcend any obligation which in its private aspect it owes to its stockholders.  It has received franchises of great value from the state, and had conferred upon it the state's transcendent power of eminent domain.  In return it took upon itself the performance of public duties and functions, in the performance of which it is in law and in fact not an independent individual or entity, but the accountable agent of the state.  Though these principles are old, and inherent in the idea of the sovereignty of the people, it would seem that in the recent rapid growth of corporate power, and of the tendency to use public franchises for the aggrandizement of individuals first and for the service and benefit of the public second, they have come to be somewhat overlooked, and need to be restated.  They have often been declared by the highest courts of the state and the Supreme Court of the United States."

The fact that a railroad corporation is chargeable with the performance of public governmental functions is, therefore, clear beyond all reasonable dispute. This governmental power which it exercises is the power of the state government. When such corporations offend against the law of the state, or have remained insolvent for at least a year, the state has the right, in the manner prescribed by law, to forfeit its charter and distribute its property to those entitled to it. Pending the rendering of such final judgment, the state court may appoint a temporary receiver, and thus retain within its control and in the hands of another of its own agents the powers and franchises which it originally gave to the corporation, the proper administration of which constituted the primary purpose for conferring them. The fact that the federal court, upon the application of a general creditor and without notice to the Attorney General or any other public official of the state, appointed receivers of a railroad corporation, will not preclude the state from revoking the charter of such corporation in a proper case, and thus protecting its own rights and the interests of those resident within its territory. To deny its right to take this action is to question its power over its own creature. To assert that a federal court, which has appointed receivers of these franchises, will refuse to grant the request of the state court that it should surrender its possession to the state court, to the end that the state may bring about their forfeiture, and in the meantime keep within the hands of its own agents the governmental powers which it has granted, is to contend that when the state seeks to take away the corporate existence the federal court may keep it alive and continue its existence. If this be so, then the right of the state to forfeit the charter of a corporation may be suspended at the pleasure of the federal court, and the sovereign power which the state alone is authorized to grant is exercised by the receivers of a federal court against the will of the state. If such a proposition be sound, then the state governments no longer enjoy any real or effective power of control over the corporations which they create, and upon the application of any creditor of a foreign state and by the consent of the officers of the corporation the state may be ousted of its rights to forfeit corporate privileges, no matter how grossly those privileges may have been abused, and the public duties, for the proper performance of which the corporation was created may be surrendered to the federal courts, which are in no way responsible to the state. Certainly no principle of comity requires a state court to assent to such a proposition, or aid in establishing a precedent so disastrous in its consequences to the constitutional rights of the state.

Such a doctrine I believe to be fundamentally wrong, without the sanction of any constitutional provision or statute, and one that can exist by virtue of no power other than that of usurpation. In view of the considerations urged above, and because the state court has exclusive jurisdiction of an action to revoke a corporate charter, and full authority and ability in such action to completely protect the rights and interests of those who invoke the jurisdiction of the Circuit Court, I believe that the motion for the appointment of receivers, in the present action, should be granted. Although this court feels bound to take this action in order that the rights of the state of New York may be

vindicated and protected, it instructs its receivers not to molest or interfere with the possession which the receivers of the federal court have assumed, inasmuch as such receivers are now actually in the possession of such property. To the end that the questions involved may be settled in a proper and orderly manner, and in deference to that spirit of comity the observance of which has done so much to make productive of goods results that dual system of jurisdiction which characterizes our government, this court instructs the receivers which it appoints to apply to the federal court and on behalf of the state court to request the federal court to relinquish its control over the corporate rights, privileges, franchises, and property involved, to the end that the purposes of this action may be carried out, and to assert whatever rights they may have by reason of their appointment as receivers of the property in question. · This was the course approved in the cases of Adams v: Mercantile Trust Co., 66 Fed. 617, 15 C. C. A. 1, and Central R. R. Co. v. Farmers' Loan & Trust Co. (C. C.) 56 Fed. 357, and in both of those cases the federal court complied with the request that was made to it.

As the Attorney General specifically charges that the receivership in the federal court was brought about by the fraudulent collusion of the parties to that suit, the receivers appointed by this court are authorized to take such action as may be proper, in an orderly manner, to establish by competent evidence, if that be possible, the charge which the Attorney General has made upon this motion, but which the proofs now before me are insufficient to sustain.