H. HERPOLSHEIMER COMPANY ET AL., APPELLEES, V. LINCOLN TRACTION COMPANY, APPELLANT.

FILED OCTOBER 30, 1914.    No. 17,666.

Opinion on motion for rehearing of case reported in 96 Neb. 154. *Rehearing denied.*

SEDGWICK, J.

The opinion in this case is reported in 96 Neb. 154. A motion for rehearing and a brief in support thereof has been filed. These are evidently based upon a misapprehension of the meaning and scope of the opinion. Defendant concedes and asserts, as in its original brief, that "the jurisdiction to affect the service, whether it should be on Twelfth street or Fourteenth street, resided entirely with the commission. * * * This part of the decision is manifestly right."

9 Neb.8

The contention is that the defendant company had the power and right to change the routing of its cars on its own initiative, and was not required to obtain permission of the state railway commission so to do. The brief in behalf of plaintiff based his contention mainly on the proposition that a street railway company, after it has obtained the permission of the city, and has constructed its lines and inaugurated its service, cannot abandon those lines and refuse to render the service, citing numerous authorities sustaining that position, among them our decision in *State v. Sioux City & P. R. Co.*, 7 Neb. 357, and *City of Potwin Place v. Topeka R. Co.*, 51 Kan. 609, *State v. Bridgeton & Millville Traction Co.*, 62 N. J. Law, 592, and *Loader v. Brooklyn Heights R. Co.*, 35 N. Y. Supp. 996. In our decision, above cited, it was held that, where a railroad company has received a grant of land from the state, upon condition that it would build a railroad from one town to another, it has no authority whatever afterwards to abandon any portion of such line and take up and remove the track. In the Kansas case it was said: "By the provisions of the ordinance, the Rapid Transit Company obtained the right to construct its roadway in the public streets, to maintain and operate it, to transport passengers and parcels by means of electrical power, to collect charges and tolls therefor. These privileges were not granted to the company solely for the company's benefit, but rather that the citizens of the plaintiff city might have the benefit of an improved mode of travel—that they might enjoy the benefits of one of the inventions of the age. * * * The company accepted the provisions of the ordinance, and constructed its road under the leave thereby obtained. May it now disregard the obligations imposed on it by its terms?" In these and many other cases the companies were compelled to maintain the service which had been established. We have not decided in this case that the defendant company cannot establish new lines of service upon such streets as the city may permit, nor that it cannot initiate necessary changes in the management of its business. It is not essential that every minor change in

the conduct of the traffic, or in the service rendered, or in other matters of detail concerned with the operation of the line, should be preceded by an application to the railway commission for permission to make the change. The opinion does not so hold. The point decided is that the company cannot make such changes in the routing of its cars as the evidence in this case shows were made or contemplated, without first obtaining the approval of the commission. South street is an important street of the city, and College View an important suburb. The travel between those localities and the residences and business places on Twelfth street is also important. Direct intercourse of that kind must be abandoned if this change is made. This would amount to an abandonment of a substantial part of the service upon that line. When the inconvenience of the patrons of the road directly interested is considered, and the effect upon property values, and similar considerations, the defendant company must have known that many people would be interested, some perhaps favoring, and others opposing, the change. The officers of the company, being principally concerned for the accommodation of its patrons, and not being interested in the changes of property values, would, it is to be supposed, naturally look for some disinterested authority to satisfactorily arrange the matter, preserving, as far as possible, the rights of all parties interested. This is the peculiar function of the state railway commission. Being administrative in its nature, this function is not within the province of the courts, and the law has wisely confided it to that body, instead of leaving it to the company itself, whose officers might under some circumstances have interests and motives not entirely in harmony with the best interest of the general public, or even with a majority of those more directly affected.

If we should assume in this case to define in general the precise limits of the authority of the railway commission even in the matter of routing cars over the tracks of the defendant company, such definitions would be worthless as a future guide, since they would be dicta only. Much

less can this court, as suggested, lay down general rules for the railway commission in the regulation and control of common carriers.

The motion for rehearing is therefore

OVERRULED.

HAMER, J., dissenting.

I think the opinion gives the railway commission more power than is contemplated by the constitution and the statute, and that it permits the invasion of private rights by such commission and is an abdication by the courts of the state of the power conferred upon them by the people.